The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Hormoz POURAT, Defendant–Appellant.

No. 02CA1621.

Colorado Court of Appeals,
Div. V.

Feb. 26, 2004.

Rehearing Denied May 6, 2004.

Certiorari Denied Nov. 8, 2004.*

---

\* Justice KOURLIS would GRANT as to the following issues:

Whether the defendant was denied his due process right to notice of the sentencing court's intent to rely on evidence from a co-defendant's trial where the sentencing court presided over the co-defendant's trial, and the defendant did not object to the trial court's reliance on the evidence or to the truth of the evidence.

Assuming that such a violation occurred, whether the court of appeals erred in refusing to apply a harmless error analysis.

Ken Salazar, Attorney General, John J. Fuerst, III, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Isaacson Rosenbaum Woods & Levy PC, Gary Lozow, Blain D. Myhre, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CRISWELL.**

Defendant, Hormoz Pourat, appeals the sentence to incarceration and fine imposed following the judgment of conviction entered upon his guilty plea to a violation of the Colorado Organized Crime Control Act (COCCA), § 18–17–101, et seq., C.R.S.2003. We reverse the sentence and remand for resentencing.

Pursuant to a plea agreement, defendant pleaded guilty to a violation of § 18–17–104(2), C.R.S.2003, for his involvement in illegally storing and disposing of hazardous waste from dry cleaning businesses. In exchange for his plea, the People agreed to the dismissal of other charges contained in a grand jury indictment. The agreement also called for him to testify truthfully in any matter concerning his codefendants. Following the sentencing hearing, he was sentenced to seventeen years in the Department of Corrections (DOC) and fined $100,000.

I.

Defendant first contends that the trial court violated his due process rights to a fair hearing by considering evidence outside the record in sentencing him to incarceration for seventeen years. Specifically, he argues that, because the court relied on its own notes and recollection of the evidence from a

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3) and § 24–51–1105, C.R.S.2003.

codefendant's trial without previously notifying him that it would do so, he was denied any realistic opportunity to investigate and rebut the evidence relied upon by the court. We agree.

■ Due process is a flexible standard that recognizes that not all situations requiring procedural safeguards call for the same process. A balance must be struck so that both constitutional interests are protected and legitimate governmental objectives are furthered. *People v. Lamb*, 732 P.2d 1216 (Colo.1987).

■ A defendant at a sentencing hearing has already been found guilty of the crime for which punishment is to be imposed, and therefore, the defendant's due process rights are correspondingly limited. *People v. Padilla*, 907 P.2d 601 (Colo.1995)(defendant not subject to mandatory sentence enhancement based on prior convictions not constitutionally entitled to rebut presumption of regularity of such convictions). Thus, the trial court is granted greater latitude in the admission of evidence at a hearing on the issue of punishment than at a trial in which the guilt or innocence of the accused is at issue. CRE 1101(d)(3) (rules of evidence are not applicable at sentencing hearings); *Von Pickrell v. People*, 163 Colo. 591, 431 P.2d 1003 (1967) (reliance by court on illegally obtained evidence referred to in probation report not violative of defendant's due process right).

However, § 16–11–102(1)(a), C.R.S.2003, requires that, when a defendant has been convicted of an offense, the probation department must prepare a report before sentence is imposed describing the details of the offense, the defendant's background, and other pertinent facts. And at least seventy-two hours before sentencing, the defendant must receive a copy of this report so that he or she may review it and prepare to correct any inaccuracies contained in it.

■ The obvious purpose of this latter requirement is to provide the defendant with notice of the information the court is to consider and to allow him or her to contest it at the sentencing hearing, notice and opportunity to be heard being the essence of procedural due process of law. *See Raymond Lloyd Co. v. Dist. Court*, 732 P.2d 612, 615 (Colo. 1987)("Due process principles require that at a minimum any person subject to proceedings that might result in the imposition of penal sanctions be afforded notice and an opportunity to be heard before imposition of a sanction.").

■ Given this basic precept, some courts have concluded that, if the court plans to rely upon facts not described in a presentence report, the defendant must be given prehearing notice of those facts and an opportunity to contest them. *See United States v. Jackson*, 32 F.3d 1101 (7th Cir.1994); *United States v. Morales*, 994 F.2d 386, 389 (7th Cir.1993)("The defendant has a right to know what evidence will be used against him at the sentencing hearing."); *see also People v. Quarles*, 182 Colo. 321, 512 P.2d 1240 (1973)(court properly recessed sentencing hearing and ordered investigation when defendant volunteered additional facts at hearing).

■ Likewise, a defendant's right to due process is denied if the sentencing court relies upon facts that are demonstrably false. *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)(mere arrests considered as convictions); *Noland v. People*, 175 Colo. 6, 485 P.2d 112 (1971)(reliance upon sale of drugs in absence of any evidence thereof). Thus, we conclude that the record of the sentencing hearing must include at least a summary of the information relied upon by the sentencing court, but not contained in the presentence report. Absent such a record, no meaningful appellate review of the sentence is possible.

Here, it is undisputed that defendant and his brother owned controlling interests in two corporations that operated from two locations—one in Colorado and one in California. Each corporation solicited business from dry cleaning establishments with the promise that it would collect hazardous waste produced by those establishments and dispose of it in compliance with all federal and state laws regulating its disposal. However, rather than complying with those laws, which apparently would have required a costly incineration process, the two corporations sim-

ply placed the materials in large drums and, by mislabeling the contents, placed these drums in ordinary landfills or in trailers that were later left abandoned on properties owned by third persons. Because of the time that it may take for these materials to invade other properties and underground water supplies, it is presently impossible to estimate the amount of damages that the improper disposal of these materials may cause. The potential damage may reach into the millions of dollars.

At the sentencing hearing, defendant asserted that, while he was aware of the illegal dumping of hazardous waste and participated in that scheme, it was his brother who had devised the plan and who actually controlled the business operations. He presented the testimony of his wife, who characterized the brother as a liar and a schemer and defendant as an "honest soul" who was guilty of "being stupid and allowing his brother to ruin everything."

In addition, counsel for defendant referred to portions of the grand jury report and interviews of witnesses before that body to suggest that defendant's brother, who had also been indicted, but who had absconded before his trial, actually directed the illegal operations. He also referred to the contents of a wiretap in which the brother asserted that defendant was not familiar with the disposal regulations.

The presentence report is abbreviated with respect to the nature of the crime and the degree of involvement and culpability of defendant and his brother. It notes that the brother served as president and registered agent for both corporations, while defendant "served as a manager directing much of the waste handling activities" and that they "together oversaw and directed the day-to-day operations" of the two corporations. There were also "lower level managers" hired "to direct the activities" at the two locations of the business, who had also been indicted as codefendants.

To rebut defendant's assertions as to the nature of his involvement, the prosecutor referred to the testimony of several witnesses at the previous trial of a lower level employee. The record before us does not indicate whether defendant testified or was even present during that trial. However, his counsel noted that he was not present at that trial, and consequently, it was difficult for counsel "to rebut some of these things."

At the sentencing in defendant's case, the trial court declared a recess for the purpose of referring to some "notes" it had made during this previous trial. Upon its return, the court referred to the long, ongoing scheme that the evidence at the previous trial had vividly described. The court also stated that, during that trial, it "clearly [had defendant's] sentencing in mind"; consequently, it had taken three pages of careful notes as to the evidence implicating defendant and his brother; and it had concluded that they were both deeply involved. The court also noted that, during the previous trial, some witnesses referred to the brother and others referred to defendant.

In referring to the testimony from the previous trial, the court made no reference to any specific witness, nor did it describe any specific testimony. Moreover, the abbreviated presentence report prepared for this case also makes no reference to any previous testimony.

The record here establishes, however, that neither defendant nor his counsel was given any notice, before the court pronounced the sentence, that the court intended to rely upon the specific evidence presented during that previous trial.

Further, while nothing in the record before us indicates that the court's characterization of the testimony was inaccurate, neither do we have any means of verifying its accuracy.

Under these circumstances, we conclude that the court erred in relying for sentencing purposes upon information and evidence not included within the presentence report or disclosed to defendant by some other means prior to the sentencing hearing. In reaching this conclusion, we note that the information relied upon by the court was not subject to judicial notice, but was purely of an evidentiary character.

Further, while counsel did not register an express objection to the court's reference, we

also conclude that his statement that he was not present at the previous trial and that he could not, under these circumstances, rebut these materials was sufficient to preserve this issue for review. *Cf. Bieber v. People,* 856 P.2d 811 (Colo.1993).

## II.

■ Defendant also contends that the $100,000 fine imposed violates the Eighth Amendment of the United States Constitution and Colo. Const. art. II, § 20 because the court imposed it without considering his ability to pay. Although we reverse the entire sentence imposed, including the fine levied upon defendant, we will address this contention because the same issue may be presented at any resentencing proceeding.

Relying on *People v. Malone,* 923 P.2d 163 (Colo.App.1995), defendant argues that the trial court is required to consider a defendant's ability to pay the fine and to place such findings on the record. He argues that, because the trial court here failed to do so, the fine imposed must be considered an excessive fine and should be vacated.

The People, relying on *United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), contend that *Malone* should no longer be followed, that the fine is proportionate to the gravity of his offense, and that, therefore, the fine is not constitutionally excessive.

■ We conclude that *Malone* is still viable and that, in imposing a fine, a trial court must consider a defendant's ability to pay.

In *Bajakajian,* the Supreme Court determined that a punitive forfeiture violates the prohibition against excessive fines if it is grossly disproportionate to the offense for which the defendant was convicted. However, although the Court determined that the fine was a sanction imposed after a conviction for a felony, the case involved a forfeiture of existing assets. In a forfeiture of existing assets, there is no need for the court to consider the defendant's ability to pay because the assets seized are sufficient to satisfy the sanction. Indeed, the Supreme Court expressly noted that the issue whether the defendant's wealth and income are relevant to the proportionality determination had not been argued and the district court had made no findings on this issue. The question whether the trial court should consider a defendant's financial status, therefore, was left unresolved. *See United States v. Bajakajian, supra,* 524 U.S. at 340, 118 S.Ct. at 2039. Thus, we conclude that the reasoning and analysis of *Malone* was not undermined by *Bajakajian.*

■ The trial court, in determining the amount of any fine to be levied, must consider the severity of the offense, the defendant's character and background, the defendant's financial status, and any other appropriate circumstances of the case. *People v. Malone, supra.* "[I]f the amount of the fine is so disproportionate to the defendant's circumstances that there can be no realistic expectation that he or she will be able to pay the fine levied, such fine must be considered to be excessive." *People v. Malone, supra,* 923 P.2d at 166; *see People v. Bolt,* 984 P.2d 1181 (Colo.App.1999).

In *Malone,* there was no indication in the record that the court considered the defendant's ability to pay, and the only evidence before the court was that the defendant was unemployed. Further, the defendant was convicted of felony criminal mischief, and the court imposed a $100,000 fine but ordered restitution of only $400. The *Malone* division determined that the fine was excessive because the court completely failed to consider the defendant's financial status.

In contrast, here, there was conflicting evidence as to defendant's financial status. Defendant failed to provide the required financial information to the probation department prior to sentencing. Defendant's wife testified that the family did not own its home and lived "paycheck to paycheck."

However, the prosecution presented evidence that (1) defendant had originally owned the house in which they lived; (2) the house was worth $600,000; (3) it was sold about the time the investigation had begun; (4) the house was sold to a relative; and (5) defendant and his family continued to live in the house rent free. The prosecution also noted that the money from the enterprise in

which defendant and his extended family participated went to the family, and they all had shared in it, even though the money could not be traced.

The court found that the enterprise had to have been lucrative because of its size, the time it had been operating, and the number of dry cleaning establishments making payments to it for disposing of and storing the waste. *See Balice v. United States Dep't of Agric.*, 203 F.3d 684 (9th Cir.2000)(income earned from illegal activity can be considered in deciding whether fine is excessive).

The court also found that the offense was severe and had as yet unknown potential consequences, the amount of the fine was potentially slight in comparison to the possible damages, and defendant's role in the offense was major. Further, the amount of the fine was ten percent of the maximum that could have been imposed under § 18–1.3–401(1)(a)(III)(A), C.R.S.2003.

The factors considered by the court, therefore, included defendant's ability to pay the fine imposed and were otherwise appropriate. Hence, the imposition of a fine in the amount of $100,000, based upon factors mentioned by the court, was not improper.

The sentence is reversed, and the case is remanded to the trial court for resentencing of defendant.

Judge CASEBOLT and Judge PICCONE concur.