22CA1368 Peo v Peterson 03-27-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1368
El Paso County District Court Nos. 10CR3801, 10CR877, 12CR3794 &
15CR737
Honorable David A. Gilbert, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Clinton Anthony Peterson,

Defendant-Appellant.

SENTENCE AFFIRMED

Division IV
Opinion by JUDGE PAWAR
Harris and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Tracy C. Renner, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1      Defendant, Clinton Anthony Peterson, appeals the indeterminate prison sentence imposed after he pled guilty to failure to register as a sex offender, resulting in revocation of probation in three cases.  We affirm.

## I.      Background

¶ 2      Peterson had been serving a three-year probation sentence based on two cases in which he was found guilty of vehicular assault and possession of a prohibited weapon.  While on probation, he pled guilty in a new case to sexual assault on a child and was placed on sex offender intensive supervised probation for an indeterminate term of ten years to life.  Based on the new offense, probation in the two prior cases was revoked and reinstated.

¶ 3      A year later, the prosecution filed probation revocation complaints in all three cases, alleging multiple violations, including frequent alcohol consumption, failure to submit to substance testing, and failure to obtain substance abuse treatment.  Probation was again revoked and reinstated, and Peterson was sentenced to ninety days in jail as a condition of probation.

¶ 4     Peterson then absconded from probation and fled to Kentucky with his roommate.  The prosecution charged him in a new case with multiple counts of failure to register as a sex offender.  He was found seven years later and returned to Colorado.

¶ 5     Peterson pled guilty to failure to register as a sex offender, and probation was again revoked in his three prior cases.  Following a hearing, the district court sentenced him to eighteen months in the custody of the Department of Corrections for failure to register, four years for vehicular assault, and an indeterminate term of eight years to life for sexual assault on a child.

¶ 6     Peterson appeals, arguing the district court violated his due process rights by (1) allowing over a dozen members of the Bikers Against Child Abuse (BACA) organization to be present at his sentencing hearing and (2) considering irrelevant evidence presented by two witnesses at the hearing.  He also argues the court abused its discretion by imposing a lengthy prison sentence without considering sentencing goals beyond punishment.  We disagree with these arguments and affirm.

## II. Due Process

¶ 7 Due process requires a district court to maintain a fair courtroom, dedicated to the equal treatment of the litigants. *People v. Aleem*, 149 P.3d 765, 776 (Colo. 2007). It is a flexible standard that requires balancing a defendant's constitutional interests and legitimate government objectives. *People v. Pourat*, 100 P.3d 503, 505 (Colo. App. 2004). Because a defendant at a sentencing hearing has already been found guilty, his due process rights are correspondingly limited. *Id.*

¶ 8 We review constitutional challenges to sentencing determinations de novo. *People v. Fritts*, 2014 COA 103, ¶ 16.

### A. BACA Presence

¶ 9 Peterson argues his sentencing hearing was fundamentally unfair because the BACA members created an inherently prejudicial atmosphere. We disagree.

¶ 10 Defense counsel requested that the district court exclude the BACA members because they were "dressed as part of a theme as a biker gang" and were there to intimidate the court and counsel. The court denied the request because it was a public hearing and, barring any disruptions or improper conduct, "everyone is

welcome." It warned that it would take measures to ensure a fair process, including dismissing disruptive individuals or, if necessary, charging them with contempt of court or intimidation. The court further stated that it was not intimidated by the BACA members' presence or attire.

¶ 11    Beyond their mere presence, Peterson does not allege any actual disruption by the BACA members at the hearing. Based on this record, and combined with the district court's findings and admonishment, we conclude the court properly balanced Peterson's interest in a fair hearing against the important governmental interest in maintaining a public proceeding. *See People v. Gonzalez-Quezada*, 2023 COA 124M, ¶ 51 (in addition to supporting a defendant's constitutional rights, public proceedings encourage witnesses to come forward, prevent perjury, and protect the community's interest in monitoring the criminal justice system).

¶ 12    The single out-of-state case on which Peterson relies, *Long v. State*, 151 So. 3d 498, 501-02 (Fla. Dist. Ct. App. 2014), does not persuade us otherwise. There, the court concluded that BACA's presence at a criminal *trial* prejudiced the defendant's right to an impartial jury because the bikers interacted with jurors before trial,

sat close to them during trial, and displayed an insignia that was intended to "send an implied message." *Id.* But Peterson had already been found guilty at the time of sentencing. As the district court observed, there was therefore no jury and no risk that a jury would be "faced with lots of buttons or indicators of what side people were on."

¶ 13　Moreover, the court explicitly found that it, as the decision maker at sentencing, was not intimidated by BACA's presence. And at the conclusion of the hearing, it thanked everyone in the courtroom for "allowing everyone to share their information and do this in a very civil manner." We therefore conclude Peterson is not entitled to relief based on BACA's presence.

## B.　Witness Statements

¶ 14　Peterson next asserts he was deprived of due process because the court heard and considered irrelevant, unproven, and uncharged conduct presented by two witnesses related to his activity in Kentucky. We are not persuaded.

¶ 15　A district court is largely unconstrained as to the evidence it may consider during the sentencing phase of criminal proceedings. *People v. Tallwhiteman,* 124 P.3d 827, 837 (Colo. App. 2005); *see*

*also Pourat,* 100 P.3d at 505 (rules of evidence are not applicable at sentencing hearings).  While the court may not consider evidence that is materially untrue, it may consider uncharged conduct in evaluating the nature of an offense and the character of the offender.  *Tallwhiteman,* 124 P.3d at 837.

¶ 16   According to a presentence investigation report (PSIR), after Peterson absconded from probation, he and his roommate became persons of interest in the disappearance and suspected homicide of a Kentucky woman named Lori Feltz.  Following "a nationwide manhunt for them," the pair was found and led authorities to Feltz's remains.  Peterson was never charged in relation to Feltz's disappearance.  The PSIR indicated that he had discovered her body at some point earlier, but he never reported it because it was near his hideout, and he knew he had a warrant out for his arrest.

¶ 17   Over defense counsel's repeated objections, the district court allowed two of Feltz's sisters to make statements at the sentencing hearing regarding their beliefs about Peterson.  Both sisters stated that Peterson's mother — with whom Peterson was living in Kentucky — lied to the police despite knowing Feltz's whereabouts, and that she and Peterson delayed reporting the discovery of Feltz's

body, which harmed Feltz's family and impeded the investigation into her disappearance. One sister stated her belief that Feltz was Peterson's "second known victim." The other stated outright that she believed Peterson and his roommate "kidnapped and murdered our sister," who would still be alive but for the prior sentencing judge's decision not to send Peterson to prison. She further stated that she had been told "Peterson killed a puppy just to see what it was like. He was fascinated by torture and death, and he did this."

¶ 18    First, Peterson argues that the defense was blindsided by the sisters' presence and ability to speak at the hearing. But the record shows that he was aware the Feltz-related evidence could be an issue at sentencing. The PSIR described his involvement in the Kentucky investigation, giving defense counsel "notice of the information the court [was] to consider" and allowing him to contest it. *See People v. Cross*, 2023 COA 24, ¶ 45. Indeed, counsel began the sentencing hearing by factually disputing the Feltz-related evidence in the report. While the PSIR said nothing about Peterson killing a puppy, the district court noted counsel's objection to this evidence as "outrageously prejudicial hearsay," and Peterson's mother explained in her statement that this claim was made by a

family member who lacked credibility. In any event, Peterson does not explain how any lack of notice prejudiced him. *See* C.A.R. 35(c) (we may disregard any error or defect not affecting parties' substantial rights). And given the district court's statement that it "clearly [was] not going to be able to consider" any alleged criminal conduct, we find no prejudice.

¶ 19 Regarding the substance of the sisters' testimony, we recognize it was troubling. But we cannot conclude it amounted to a due process violation. While the district court allowed the sisters to speak, it repeatedly emphasized that it could not and would not take unproven homicide claims into consideration. It also found that the sisters' statements played "no part whatsoever" in its sentencing decision. *Cf. Liggett v. People*, 135 P.3d 725, 733 (Colo. 2006) (holding, in the context of a bench trial, that we presume that "all incompetent evidence is disregarded by the court in reaching its conclusions, and the judgment will not be disturbed unless it is clear that the court could not have reached the result but for the incompetent evidence") (citation omitted).

¶ 20 We disagree with Peterson that the time and sympathy the court gave to the Feltz sisters belies its insistence that their

statements did not inform its decision. The court carefully explained that it allowed them to speak as a "courtesy" and because Peterson's decision to "hide [himself] away" was the cause of their worries.[1] And as discussed, the court took pains to emphasize that it would not consider their testimony for any improper purpose. We therefore conclude the court properly exercised its discretion during the sentencing phase to allow the sisters to testify and to limit its consideration of their statements. *See Pourat*, 100 P.3d at 505 (the court is granted greater latitude at this stage than at trial).

¶ 21    Peterson also argues that the sisters' testimony lessened the mitigating impact of his mother's statement, because she was forced to defend against the allegations. But while his mother spent some of her speaking time at the sentencing hearing defending her credibility, Peterson doesn't identify anything she was not able to say because of the sisters' testimony. As we read the record, his mother read the entirety of a prepared statement in support of her

---

[1] Viewed in this context, the court's later observation that the offense of sexual assault on a child can cause "a community — in this case, more than one community" a lifelong harm also properly focused on the widespread impact of Peterson's decision to flee probation for seven years.

son. Her fiance also gave a statement that she was a truthful person, despite the "propaganda" created against her. Especially given the district court's adamance that it could "take nothing" from the sisters' statements for sentencing purposes anyway, we see no due process violation.

### III. Failure to Consider Non-Punishment Sentencing Goals

¶ 22 Finally, we disagree with Peterson's argument that the court erred by considering only punitive justifications for his sentence.

¶ 23 Sentencing is a discretionary function, and the district court is afforded wide latitude in imposing a sentence. *People v. Martinez*, 179 P.3d 23, 25 (Colo. App. 2007). A court abuses its discretion if "it fails to consider the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law and the deterrence of crime, and the protection of the public." *People v. Linares-Guzman*, 195 P.3d 1130, 1137 (Colo. App. 2008). While it may not unduly emphasize one factor to the exclusion of the others, it need not engage in a point-by-point discussion of every factor relevant to its sentencing decision. *People v. Torrez*, 2013 COA 37, ¶ 73. "A reasonable explanation for the sentence will suffice." *Martinez*, 179 P.3d at 26.

¶ 24    We conclude the district court properly exercised its discretion in imposing the sentence it did.  The court acknowledged that an indeterminate prison sentence is serious and severe.  It reasoned that Peterson's "abuse of a child in this way is heinous and unforgivable, and creates a circumstance for a survivor and for a community that can be lifelong."  It further explained that Peterson's probation violation was "probably the most serious violation of probation that exists," given that he demonstrated an inability or unwillingness to engage in treatment "for almost a decade."

¶ 25    While Peterson argues the court failed to consider his capacity for rehabilitation and his need for substance abuse treatment, the court made specific findings about "the considerable resources" that were available to him while he was on probation, including individual and group therapy and substance abuse testing.  It further found that Peterson actively avoided taking advantage of those resources, despite having "about 2,700 chances" to rehabilitate himself — one for "every day [he] woke up out of the jurisdiction and out of treatment."

¶ 26 "While rehabilitation is a preferred goal [of sentencing], it is only one factor which must be considered in tailoring a sentence to each individual case." *People v. Jordan*, 630 P.2d 613, 615 (Colo. 1981) (citation omitted). We conclude the court properly considered the case before it and determined that certain sentencing factors — including the severity of Peterson's crime and his demonstrated inability to succeed on probation — were more compelling than others. *See Torrez*, ¶¶ 74, 77 (court properly exercised discretion to impose maximum sentence where it set forth reasons for its decision, analyzed the egregious nature of the crimes, and determined a harsh sentence was justified). Because the court provided a reasonable explanation for the sentence it imposed, we will not disturb its decision.

## IV. Disposition

¶ 27 The sentence is affirmed.

JUDGE HARRIS and JUDGE GROVE concur.