2011 VT 22

# State of Vermont v. Terry L. Koons, Jr.

[20 A.3d 662]

No. 10-079

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed February 10, 2011

286

*William H. Sorrell*, Attorney General, and *Ultan Doyle*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Frank H. Langrock* of *Langrock Sperry & Wool, LLP*, Middlebury, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant was convicted of one count of sexual assault on a minor and one count of lewd or lascivious conduct with a child. He challenges his aggregate sentence of six to twenty-five years to serve on the grounds that: (1) it is grossly disproportionate to the crimes; and (2) the sentencing court improperly relied on conduct underlying a prior acquittal without providing notice and an opportunity to respond. We agree with the second claim, and therefore vacate the sentence and remand for resentencing.

¶ 2. This case arose out of a sexual relationship that began when defendant was nineteen years old and the complainant was fifteen years old. The relationship lasted several months and ended just short of the complainant's sixteenth birthday. The complainant testified that she became pregnant and believed defendant to be the father but acknowledged that DNA testing later disproved his paternity. The charge of lewd or lascivious conduct involved a single incident in which defendant, then nineteen years old, fondled another fifteen-year-old girl while she lay in bed with defendant and the complainant. At trial, defendant denied knowing either victim or committing the charged miscon-

duct. The jury, as noted, returned verdicts of guilty as to both offenses.

¶ 3. A presentence investigation report (PSI) and psychological evaluation were provided to the parties and the trial court prior to the sentencing hearing. The PSI disclosed an extensive criminal record, including convictions for aggravated domestic assault, DUI, simple assault, unlawful mischief, and several probation violations. Based upon this history and defendant's failure to take responsibility for his current crimes, the PSI recommended a sentence of ten to twenty-five years to serve for the sexual assault and a consecutive sentence of five years to serve for the lewd or lascivious conduct.

¶ 4. The psychological evaluation, in contrast, concluded that the recommended sentence was excessive. The evaluator, a clinical psychologist, noted that the offense involved consensual sexual relations with a girl several months shy of her sixteenth birthday when defendant was nineteen and that defendant had since acknowledged the relationship; that defendant had the advantages of a supportive family and a good job and home to which he could return upon his release; and that defendant would benefit from both cognitive self-change programming while incarcerated as well as the "developmental maturity" that came with age. The evaluator concluded that defendant was "capable of altering his life toward more productive ends" and recommended that any sentence consider "the probable success of treatment and supervision strategies."

¶ 5. Defendant submitted a sentencing memorandum in response to the PSI, urging imposition of the minimum sentence necessary to complete sex-offender programming. He noted that the PSI continued to erroneously allege that he had fathered the complainant's child, claimed that he had since accepted responsibility for the offenses, and pointed out that all but one of his prior convictions were misdemeanors.

¶ 6. At the sentencing hearing in January 2010, the court informed the parties that it had reviewed the PSI, psychological evaluation, and sentencing memorandum, and confirmed that neither party wished to present additional evidence apart from a statement in allocution from defendant. The state's attorney argued briefly in support of the PSI's recommended sentence, citing defendant's perjury at trial, criminal record, and poor history of supervision. She concluded with a "final reason" predi-

cated on an earlier, unrelated criminal action against defendant that had resulted in an acquittal. The state's attorney reminded the court that it had presided at that trial as well — which had also involved "an allegation of inappropriate sexual conduct" with a minor — and urged the court to make a finding "that that event occurred, based on your Honor sitting on that case" and to "consider that in formulating a sentence." The court responded that it "remember[ed] the case vaguely" and asked whether defendant had testified on his own behalf. The prosecutor stated that she could not recall, but asserted that defendant plainly had "an issue with young females."

¶ 7. Defense counsel argued for the minimum sentence necessary to complete sex offender counseling, which he estimated to be three to five years to serve. Counsel cited defendant's recent acceptance of responsibility for the offenses, the ages of defendant and the complainant at the time of the offenses, and defendant's amenability to rehabilitation and desire to lead a productive life. Defendant spoke briefly, apologizing to the complainant and the court for his behavior, admitting his guilt, and asking for lenience.

¶ 8. The trial court then outlined its basic sentencing considerations. First, the court observed that "there's a problem about having sex with young women." Second, it found "disturbing" defendant's willingness to lie at trial. "Despite this," the court explained, it did not intend to impose the full sentence recommended by the State. "And I'm doing that," it continued, "even though I believe that this wasn't the first young girl that you had sex with. The offense for which you were acquitted, I believe that the state established by clear and convincing evidence that you did have sexual relations with that girl."

¶ 9. The court then indicated that it intended to impose "a significant period of time to serve" substantially in excess of that requested by defendant. "And the reason," the court explained, "is double deterrence. Deterrence from having sex with young girls and a deterrence from coming in here and lying. And . . . they're both, in my mind, equally important." The court thereupon imposed a sentence of five to twenty years to serve for the sexual assault (five fewer than the minimum recommended by the State) and a consecutive sentence of one to five years for the lewd or

lascivious conduct, for an aggregate sentence of six to twenty-five years to serve. This appeal followed.[1]

¶ 10. The trial court enjoys broad discretion in sentencing, and its judgment will be affirmed if the sentence falls within the statutory limits and is "not derived from the court's reliance on improper or inaccurate information." *State v. Ingerson*, 2004 VT 36, ¶ 10, 176 Vt. 428, 852 A.2d 567. To ensure reliability, our rules establish "a process of disclosure and opportunity to rebut." *State v. Ramsay*, 146 Vt. 70, 78, 499 A.2d 15, 20 (1985). Thus, a PSI must be made available for inspection at least fourteen days prior to sentencing, and all information submitted for consideration at sentencing must be disclosed "sufficiently in advance to afford a reasonable opportunity to rebut [the] information to be presented." *Id.*; see V.R.Cr.P. 32(c)(3) ("Any other information submitted to the court for consideration at sentencing shall be disclosed sufficiently prior to the imposition of sentence as to afford reasonable opportunity for the parties to decide what information, if any, the parties intend to controvert by the production of evidence.").

¶ 11. Defendant asserts that the trial court here erred in relying on the prior sexual assault charge that had resulted in an acquittal without affording him notice and an opportunity to respond.[2] Because defendant failed to raise this objection at the

---

[1] Defendant has challenged on appeal only the sentence imposed, not the underlying conviction.

[2] Defendant does not challenge, and we therefore do not address, the propriety of relying on acquitted conduct at sentencing. We note, however, that the United States Supreme Court has expressly upheld the practice, see *United States v. Watts*, 519 U.S. 148 (1997), and many state courts have endorsed its reasoning that acquittal "merely proves the existence of a reasonable doubt as to . . . guilt" and does not prevent the sentencing court from considering the conduct underlying the acquitted charge any more than it is prevented from using uncharged conduct, so long as it is proved by a preponderance of the evidence. *Id.* at 155 (quotation omitted); see *People v. Ewing*, 458 N.W.2d 880, 893 n.15 (Mich. 1990) (observing that "vast majority of jurisdictions . . . have held that a trial court properly may rely on evidence of crimes of which the defendant has been acquitted"). The practice, however, is not altogether free of criticism or controversy. See generally E. Ngov, *Judicial Nullification of Juries: Use of Acquitted Conduct at Sentencing*, 76 Tenn. L. Rev. 235, 275, 284, 288 (2009) (urging discontinuance of use of acquitted conduct at sentencing because it "invites courts to nullify juries," "punish[es] a defendant for a crime that he did not commit," and unfairly affords the prosecution "a second bite at the apple" (quotation omitted)); M. Doerr, Note,

sentencing hearing, we review solely for plain error.[3] "Plain-error analysis requires us to consider whether these are exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Yoh*, 2006 VT 49A, ¶ 39, 180 Vt. 317, 910 A.2d 853 (quotation omitted). In applying this standard, we have utilized the "more concrete" federal test, which requires as follows: "First, there must be an error; second, the error must be obvious; and third, it must affect substantial rights and result in prejudice to the defendant." *Id.* If these criteria are satisfied, we will correct the error if it ":seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation omitted).

¶ 12. As to the first criterion, the finding of error here is inescapable. Nothing in the PSI referred to defendant's earlier acquittal or gave any indication that the State intended to rely on the underlying charge and conduct — despite the not-guilty

---

*Not Guilty? Go to Jail: The Unconstitutionality of Acquitted-Conduct Sentencing*, 41 Colum. Hum. Rts. L. Rev. 235, 273 (2009) (opining that use of acquitted conduct at sentencing raises constitutional concerns and "threatens to diminish pubic confidence in the criminal justice system"); see also *United States v. White*, 551 F.3d 381, 392 (6th Cir. 2008) (Merritt, J., dissenting) ("[T]he use of acquitted conduct at sentencing defies the Constitution, our common law heritage, the Sentencing Reform Act, and common sense."); *United States v. Canania*, 532 F.3d 764, 777 (8th Cir. 2008) (Bright, J., concurring) ("[T]he unfairness perpetuated by the use of 'acquitted conduct' at sentencing in federal district courts is uniquely malevolent."). A minority of states have forbidden the use of acquitted conduct at sentencing, generally concluding that its use is inconsistent with the presumption of innocence "where a defendant had been fully acquitted of such charges by a jury." *State v. Cote*, 530 A.2d 775, 784 (N.H. 1987); accord *Bishop v. State*, 486 S.E.2d 887, 897 (Ga. 1997) ("In aggravation of the sentence, the State may prove the defendant's commission of another crime, despite the lack of a conviction, so long as there has not been a previous acquittal." (quotation omitted)); *State v. Marley*, 364 S.E.2d 133, 139 (N.C. 1988) (holding that use at sentencing of acquitted conduct "is fundamentally inconsistent with the presumption of innocence itself"). Although we cited *Watts* with approval in *State v. Grega*, 168 Vt. 363, 386, 721 A.2d 445, 461 (1998), this Court has not specifically addressed the question, and — as the issue has not been briefed and argued — we defer it to another day.

[3] Although defendant does not explicitly argue "plain error" on appeal, he acknowledges the absence of an objection and asserts that the error violated his fundamental due process right to be sentenced on the basis of factually reliable and accurate information. Accordingly, we conclude that the claim was adequately raised.

verdict — at the sentencing hearing. Thus, the circumstances are plainly distinguishable from the case cited by the State as controlling, *State v. Pellerin*, 164 Vt. 376, 670 A.2d 255 (1995). There, the victim of an earlier offense committed by the defendant testified at sentencing without prior notice, but the defendant had been notified of the State's intent to rely on the prior conviction and was given ample opportunity to controvert the witness's testimony through cross-examination. *Id.* at 382-83, 670 A.2d at 259-60. Here, there was no such notice and opportunity. The error was patent.

¶ 13. The second step of the test requires that the error be "plain." A plain error is one that is clear or obvious under existing law. See, e.g., *United States v. Dunigan*, 555 F.3d 501, 506 (5th Cir. 2009) (error must be "clear under existing law"); *United States v. Phaneuf*, 91 F.3d 255, 263 (1st Cir. 1996) (plain error is "an obvious and clear error under current law"). There is no question that Vermont Rule of Criminal Procedure 32(c)(3) existed in its current form at the time of the sentencing in this case and required both advance notice of any information on which the State intended to rely and an opportunity to respond. The error here was therefore plain.

¶ 14. The third step of the analysis requires a showing that the error was prejudicial and affected substantial rights. The State asserts in this regard that there was no prejudice to defendant because the trial court either did not rely on the earlier acquitted conduct or any possible reliance was inconsequential. The record shows otherwise. The state's attorney raised the issue, urging the court to find, despite defendant's acquittal, that the prior sexual assault had "occurred" and to "consider that in formulating a sentence." Although the court initially indicated that it remembered the case only "vaguely," it later found that defendant "did have sexual relations with" the alleged victim. The court's reliance on the acquitted conduct in formulating a sentence was also palpable. While noting that it did not intend to impose the full sentence recommended by the State "despite" its finding on the prior sexual assault, the court explained that it was nevertheless persuaded to impose "a significant period of time to serve" for two "equally important" reasons: defendant's "coming in here and lying," and his "having sex with young girls." The court's finding — on the basis of the earlier charge — that "this wasn't

the first young girl that you had sex with" leads to the unavoidable conclusion that the acquitted conduct played a material part in its decision to impose a "significant" sentence. Thus, the prejudice here — like the error itself — is plain.

¶ 15. The final question is whether the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Yoh*, 2006 VT 49A, ¶ 39. Although these categories are broad and offer little in the way of specific guidance, we find instructive a number of federal decisions holding in similar circumstances that a trial court's detrimental reliance on information not disclosed in advance of sentencing raises serious concerns about the fairness, integrity, and reputation of the judicial process. See, e.g., *United States v. Lovelace*, 565 F.3d 1080, 1092-93 (8th Cir. 2009) (concluding that trial court's reliance on "personal knowledge" of earlier uncharged offense without notice to defendant was plain error that "raise[d] serious concerns about fairness" and thus required reversal); *United States v. Hayes*, 171 F.3d 389, 395 (6th Cir. 1999) (holding that trial court's reliance on undisclosed victim impact letters at sentencing was "the type of error that may undermine the fairness of a proceeding and that certainly tarnishes the public reputation of judicial proceedings" and therefore warranted relief); *United States v. Valentine*, 21 F.3d 395, 398 (11th Cir. 1994) (concluding that, as a result of trial court's failure to provide advance notice of factors warranting enhanced sentence, defendant "was deprived of a fundamentally fair sentencing hearing"); *United States v. Curran*, 926 F.2d 59, 63-64 (1st Cir. 1991) (trial court's reliance at sentencing on undisclosed victim-impact statements risked "appearance of impropriety" in judicial process and thus compelled resentencing).

■ ■ ¶ 16. We conclude, similarly, that the trial court's reliance here on undisclosed acquitted conduct without the safeguards of Rule 32(c)(3) is precisely the kind of error that may impair the integrity of the judicial process and tarnish its reputation for fairness. Accordingly, we conclude that defendant's sentence must be vacated and the matter remanded for resentencing before a different judge. See *United States v. Craven*, 239 F.3d 91, 103 (1st Cir. 2001) (holding that, where sentencing court improperly relied on undisclosed information, sentence must be vacated and cause remanded for resentencing before a different judge "to maintain the perception of impartiality"); *In re Meunier*, 145 Vt. 414, 423, 491 A.2d 1019, 1025 (1985) (sentencing error required reversal and

remand for resentencing before a different judge "[i]n order to insure no inadvertent prejudice"); *State v. Neale,* 145 Vt. 423, 436, 491 A.2d 1025, 1033 (1985) (holding that, where sentencing court improperly relied on hearsay evidence in imposing sentence, the Court would remand the case "for resentencing before a different judge").[4]

*The sentence is vacated, and the cause is remanded for resentencing before a different judge.*

---

[4] In light of our holding, we need not address defendant's disproportionate-sentence claim, which may become moot after resentencing.