2014 VT 53

# In re Burt Allen

[99 A.3d 180]

No. 12-474

Present: Reiber, C.J., Dooley and Skoglund, JJ., and Arms, Supr. J. and Burgess, J. (Ret.), Specially Assigned

Opinion Filed May 23, 2014

*Devin McLaughlin* of *Langrock Sperry & Wool, LLP*, Middlebury, for Petitioner-Appellant.

*Thomas J. Donovan, Jr.*, Chittenden County State's Attorney, and *Andrew R. Strauss*, Deputy State's Attorney, Burlington, for Respondent-Appellee.

¶ 1. **Skoglund, J.** Petitioner appeals from the trial court's order granting summary judgment to the State on his petition for post-conviction relief (PCR). He argues that the court applied improper legal standards in reaching its decision on his ineffective-assistance-of-counsel claim. We affirm.

¶ 2. Petitioner was originally charged with aggravated sexual assault for allegedly penetrating his eight-year-old step-granddaughter with his finger. Petitioner entered into a plea agreement and pled guilty to lewd and lascivious conduct with a child. The amended charge stated that petitioner's hand had contact with the victim's vulva. The State's description of the offense, to which petitioner agreed, was as follows: "On or about November 22, 2007, [petitioner] took his granddaughter to his workshop and they were going to be playing some games. He set her up on a desk and put oil on his hands, some sort of lubricant from his workshop, and actually touched her vaginal area."

¶ 3. A presentence investigation report (PSI) was completed prior to sentencing. The PSI contained statements referring to petitioner's digital penetration of the victim. Specifically, the PSI included both the victim's original statement to police that petitioner had put his finger a "little bit inside" and petitioner's

admission during police questioning that he touched and digitally penetrated the victim. In addition, the PSI reported that petitioner minimized the seriousness of the event and its impact on the victim. The probation officer recommended a sentence of eight-to-fifteen years, all suspended except eight years. The PSI stated the following rationale in support of this recommendation: "[A]fter a thorough discussion considering several factors, ultimately, the focus continued to revert back to [petitioner's] minimization of the harm caused to the victim and her family and his lack of empathy." In his written response to the PSI, petitioner focused on rebutting the contention that he had minimized his conduct and the impact that it had on the victim, and he highlighted mitigating factors, such as his age, health, and remorse. Petitioner did not object to the mention of penetration in the PSI.

¶ 4. At the sentencing hearing, the State argued for a sentence of ten-to-fifteen years to serve based on the nature of the crime, petitioner's failure to take responsibility, and his failure to acknowledge that his actions harmed the victim. After its closing argument, the following exchange occurred:

> THE COURT: There's . . . several references in [the PSI] and the affidavits and statements of everybody, to the effect that [petitioner] put his finger into this child's vagina. . . . [D]id I read those correctly, Ms. Hardin [the attorney for the State]?
>
> MS. HARDIN: The contention was that — well, first of all, [the victim] wouldn't be able to testify whether he went inside or not. The contention was, on the part of the defense, that [petitioner] was somehow bullied into making that statement after repeatedly being asked by the police officer. . . . That would have entailed motions to suppress and all sorts of motions to dismiss. And — and we, in making this plea agreement, decided that we would forego those and — and not have the child have to come in and testify at a 12(d) hearing and this is the way we resolved the case. But yes, in fact . . . the affidavit was replete and the interview was replete with that. It was initially charged as a sexual assault.
>
> THE COURT: Well, I understood that. And . . . the plea, obviously, has limited the potential incarceration. . . .

Title 13 says that the sentencing court is to consider the nature and circumstances of the crime. And the affidavits, submitted by the defendant, and the statements that are made by the adults who talked to the child later, are . . . a part of this record. Okay. Okay.

MS. HARDIN: And, Your Honor, just to add, I would say that . . . the use of lubricant was pretty clear as to what the intent was.

¶ 5. Petitioner's trial counsel argued for a sentence of one-to-five years, all suspended but one year, but did not address the penetration issue. In response, the State argued only that petitioner's allocution further illustrated his lack of empathy for the victim.

¶ 6. In handing down its sentence, the sentencing court stated at the outset that it found the victim's description of the offense to be reliable and it recounted her version of events, including penetration. The court then stated the basis for its sentence:

[Petitioner], in his interviews, has minimized what he did. He says that the incident probably had no impact on the child, unless people would tell her otherwise. Words can't describe how serious an offense this is, because of the betrayal of this innocent child.

Much of the defense arguments [have] gone to the point of saying well, this is only one incident. . . . [I]t's one incident, but it's an incident that has caused so much damage that a severe sentence must be imposed. This is a horrible offense.

The common law says I must consider general deterrence, specific deterrence, rehabilitation, and punishment. Contrary to what [petitioner] has represented to this Court, his act will have a dreadful impact on this child. I don't wish it, but I've been in this business many, many years and I'm sorry to say that the prognosis is difficult for this child. The statements that I heard in Court here from the parents show that the bad impact is already being felt by this little girl. I've dealt with many people as adults who have been damaged in this way as children and the consequences of this act cannot be exaggerated.

When punishment is imposed by a court in Vermont, it must reflect the harm that has been done. The harm that is done here is almost beyond calculation. And this was not an impulsive act, this was a deliberate act that was designed and executed in several steps; the towel, the lubricant, were waiting for this eight-year-old.

¶ 7. The court sentenced petitioner to eight-to-fifteen years to serve, and stated that "[petitioner] is immediately in custody." According to petitioner's trial attorney, petitioner was taken into custody before the end of the sentencing hearing, and the attorney was required to ask that petitioner remain in court until his sentencing hearing concluded. Petitioner's trial attorney also asserted that the sentencing judge became "beet red" as he spoke and was "clearly worked up and agitated." According to the attorney, the judge "was hunched over and leaned forward when he spoke and saliva was literally coming out of his mouth as he spoke."

¶ 8. After sentence was imposed, petitioner's attorney objected that "[t]his was a plea to [a charge of lewd and lascivious conduct with a child] and the court's conclusions are clearly beyond the offense conduct relative to [the] alleged penetration." He also asserted that the allegations of penetration "were never attested and were never probed" and that the State had conceded that the victim would not be able to substantiate penetration. The sentencing court responded:

I don't think that's true at all. . . . I think that what Ms. Hardin said is something I've heard repeatedly. The State chose not to put this child through a trial so that there could be an aggravated sexual assault conviction. They chose to spare her that. And . . . the parties negotiated the settlement, which, frankly, was less than [petitioner] would have received if the State had chosen to put this child through such an ordeal.

¶ 9. In his direct appeal, petitioner argued that the trial court erred as a matter of law by sentencing him based on digital penetration when this was a disputed issue, no evidence was presented concerning penetration at sentencing, and the State admitted that it could not prove this fact. *State v. Allen*, 2010 VT 47, ¶ 6, 188 Vt. 559, 1 A.3d 1003 (mem.).

¶ 10. In considering these arguments, we explained that a sentencing court has discretion "to consider a broad range of relevant information including the particular facts of the offense, even if such facts are not explicitly an element of the charge." *Id.* ¶ 7 (citing *State v. Thompson*, 150 Vt. 640, 645, 556 A.2d 95, 99 (1989) (holding that the court could consider defendant's use of force in sexual assault, even though it was not an element of the offense, "because it shed light on the nature of the assault and defendant's proclivities, and therefore assisted the judge in determining an appropriate sentence")). We added that, "under Vermont Rule of Criminal Procedure 32, the sentencing court may consider information from a variety of sources including the PSI." *Id.* We emphasized that the rules set forth a specific process for objecting to facts set forth in a PSI.

¶ 11. At the outset, we rejected petitioner's assertion that he was not required to object to the mention of penetration in the PSI because the State had admitted that it could not prove penetration. *Id.* ¶ 9. We found no such admission. We further concluded that because petitioner did not challenge the reliability of the penetration evidence prior to being sentenced, he had waived any objection to the court's use of this evidence on appeal. *Id.* ¶ 13.

¶ 12. Petitioner then filed the instant PCR petition, arguing that his trial counsel was ineffective for failing to object to the allegation of penetration in the PSI, and that, but for this error, a reasonable probability existed that he would have received a lesser sentence. The State moved for summary judgment, asserting that regardless of whether petitioner could establish deficient performance by counsel, he could not establish that the sentencing court relied on the finding of penetration in reaching its sentence, and thus, he could not show prejudice. Petitioner opposed the motion and filed a cross-motion for summary judgment.

¶ 13. ■ The court granted summary judgment to the State. As the court explained, to establish his claim, petitioner needed to show by a preponderance of the evidence that defense counsel's performance "fell below an objective standard of reasonableness informed by prevailing professional norms." *In re Combs*, 2011 VT 75, ¶ 9, 190 Vt. 559, 27 A.3d 318 (mem.) (quotation omitted). If he met this first burden, petitioner needed to further show that "counsel's performance prejudiced the defense by demonstrating 'a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)) (additional citations omitted). This two-part test "is essentially equivalent under the United States and Vermont constitutions." *Id.*

¶ 14. For summary judgment purposes, the court found that petitioner made out a prima facie case that counsel's performance fell below an objective standard of reasonableness. As to the second element, however, the court concluded that petitioner could not show a reasonable probability that he would have received a lesser sentence had defense counsel objected to the allegations of penetration in the PSI. The PCR court explained that the bulk of the argument from the parties and the court's explanation of the basis for its sentence contained no mention of penetration. While the court described the crime as "serious" and "horrible," the court's stated reason for that description was that the crime was a betrayal of an innocent child. The court also mentioned petitioner's failure to acknowledge the harm to the victim and the deliberate nature of his conduct. To the extent that the court imposed a harsh sentence, its stated reasons for doing so had nothing to do with penetration, and the sentence was less than the ten-to-fifteen years that the State could seek under the terms of the plea agreement.

¶ 15. The PCR court found that the sentencing court was undoubtedly aware of the statements in the PSI regarding penetration. The judge asked about this issue at the time of sentencing and adopted penetration in its findings of fact. The court concluded, however, that petitioner could not show by a "preponderance of the evidence" that the court would have imposed a lesser sentence if it had not considered those statements. The court found no basis for petitioner's suggestion that the sentencing court was so offended by the penetration allegations that it ignored potentially mitigating evidence. As this Court noted in petitioner's direct appeal, the sentencing court "adequately considered all of the relevant factors in this case." *Allen*, 2010 VT 47, ¶ 14. The PCR court concluded that, absent any suggestion of penetration, the sentencing court would have been within its discretion to impose the sentence it did, and the court's specific explanation of the basis for its sentence would support the sentence even without consideration of the statements in the PSI relating to penetration.

¶ 16. The PCR court also rejected petitioner's contention that the sentencing court's statement that "[petitioner] is immediately in custody" proved that the court was prejudiced by the penetration issue. The sentencing court made this statement at the conclusion of its remarks about sentencing, following the actual imposition of the eight-to-fifteen-year to-serve sentence. The transcript reflects that counsel told petitioner, apparently as an aside, to "hold on a second," and that petitioner "needed to see this or hear this." Defense counsel then raised several objections about the court's sentencing decision, which the court rejected. Finally, defense counsel stated that he understood the court had ruled that petitioner's sentence would begin immediately and he asked the court to allow petitioner thirty days to put his affairs in order before beginning his sentence. To this request, the court replied: "Okay. That request is denied. He's in custody." The court then stated that defense counsel should communicate with the Department of Corrections about any medical needs that petitioner had, and the court offered its assistance in getting petitioner his medication. At that point, the hearing concluded.

¶ 17. The PCR court noted that it would be erroneous for a sentencing court to order a defendant who has not been disruptive to the proceedings and who had not voluntarily absented himself to be removed from his sentencing hearing before the proceeding had concluded. However, the court found that it was not entirely clear from the record that that is what happened. Even assuming that petitioner was in the process of being removed from the courtroom before defense counsel objected, there was no indication in the record or in defense counsel's affidavit that the sentencing judge had ordered that action.

¶ 18. The court also rejected the argument that the sentencing judge's appearance and demeanor could be employed to infer that the sentence was harsh because of the issue of penetration. It reasoned that the conduct to which petitioner admitted in pleading to the lewd-and-lascivious-conduct-with-a-child charge, which was properly before the judge at sentencing, could reasonably be expected to cause a strong expression of condemnation. It found that the sentencing judge's "beet red" complexion and evidence of anger could not be traced to a single aspect of the crime. It stated that an experienced judge, sitting on a felony case, could be expected to be moved and angered by petitioner's conduct. Thus, because petitioner could not meet the second element of his

ineffective-assistance-of-counsel claim, the court granted summary judgment to the State. This appeal followed.

¶ 19. "We review orders for summary judgment de novo using the same standard as the trial court." *Campbell v. Stafford*, 2011 VT 11, ¶ 10, 189 Vt. 567, 15 A.3d 126 (mem.). Summary judgment is appropriate when there are no genuine issues of material fact, and any party is entitled to judgment as a matter of law. V.R.C.P. 56(a). The nonmoving party is entitled to "the benefit of all reasonable doubts and inferences." *Stafford*, 2011 VT 11, ¶ 10 (quotation omitted).

¶ 20. ■ Petitioner first argues that the court applied the wrong legal standard in evaluating his ineffective-assistance-of-counsel claim because it stated in one part of its decision that petitioner could not show, by a preponderance of the evidence, that the court would have imposed a lesser sentence if it had not considered statements about penetration. Cf. *Strickland*, 466 U.S. at 694 (recognizing that to demonstrate prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," and "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome"). This appears to have been a mere misstatement, and harmless error, as the court cited the correct standard numerous times in its decision.

¶ 21. We thus turn to petitioner's argument that the court failed to give him "the benefit of all reasonable doubts and inferences" in reaching its decision and that he is entitled to an evidentiary hearing on the question of whether he suffered prejudice from counsel's alleged unprofessional errors. According to petitioner, the sentencing court's focus on the issue of penetration clearly supported a reasonable inference that the court relied on this fact in determining an appropriate sentence. Petitioner also asserts that the PCR court resolved disputed issues of fact. Petitioner points to the sentencing court's statement that "[petitioner] is immediately in custody," which he argues demonstrated the court's anger with petitioner that was linked to the judge's belief that petitioner had digitally penetrated the victim. Petitioner argues that the PCR court improperly dismissed this allegation by finding it unclear from the record that this is what happened, and finding that there was no indication that the sentencing court had ordered such action.

¶ 22. Petitioner also points to the PCR court's rejection of his argument that the sentencing judge's appearance and demeanor showed that he was treating the crime as a sexual assault rather than as lewd and lascivious conduct. Petitioner asserts that the court could not reject this inference on summary judgment.[1] If the summary judgment standard is properly applied, petitioner continues, he should be entitled to a hearing on the question of whether he suffered prejudice due to counsel's alleged unprofessional errors.

¶ 23. We find these arguments unpersuasive, and we reject petitioner's assertion that these are "reasonable" inferences that can be drawn from the undisputed facts. We conclude, as a matter of law, that there is no reasonable probability that, but for counsel's alleged unprofessional errors, the result of the sentencing proceeding would have been different. As we have explained, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *In re LaBounty*, 2005 VT 6, ¶ 7, 177 Vt. 635, 869 A.2d 120 (mem.) (quotation omitted). In the sentencing context, this requires a reasonable probability that petitioner would have received a different sentence. *Porter v. McCollum*, 558 U.S. 30, 41 (2009) (per curiam). In assessing prejudice for purposes of an ineffective-assistance-of-counsel claim, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 792 (2011).

¶ 24. As set forth above, the issue of penetration did not form the basis of the sentencing recommendation found in the PSI, the State did not rely on penetration to argue for a stricter sentence than that recommended in the PSI, and the court did not cite

---

[1] In considering petitioner's arguments, we reject the State's assertion that certain affidavits filed by petitioner in connection with his motion for summary judgment should not be considered. The PCR court specifically allowed petitioner to file these materials and considered them in reaching its decision. It "closed the evidence" on the State's motion for summary judgment, but allowed petitioner to file a cross-motion for summary judgment with supporting materials. The court indicated that it only wanted to rule on the summary judgment issue one time and wanted to have all of the parties' arguments and evidence before it. While one of petitioner's affidavits contained only legal conclusions, the second affidavit contained allegations by petitioner's trial attorney about the sentencing court's demeanor and his assertion that petitioner was remanded into custody prior to the conclusion of the hearing. This information was properly before the PCR court and we have considered it here.

penetration as a basis for the sentence it imposed. Essentially, the court adopted the recommendation in the PSI, and expressed similar reasons for the sentence as those advanced by the probation officer. The court cited petitioner's minimization of the damaging effect his actions were likely to have on the victim, his betrayal of an innocent child, and the deliberate nature of his actions. The sentence it imposed was less than that advocated by the State, and less than what was allowed under the terms of the plea agreement.

¶ 25. ■ ■ This undisputed evidence stands in stark contrast to the slight facts identified and relied upon by petitioner. Of course, as the PCR court observed, the only person who knows for sure what motivated the court's decision is the trial judge himself and he cannot be asked. *In re Wilkinson*, 165 Vt. 183, 188, 678 A.2d 1257, 1260 (1996) (recognizing "firmly established rule" that judge "may not be asked to testify about his mental processes in reaching a judicial decision" (quotation omitted)). Nonetheless, it is not reasonable to infer, given the evidence in the record, that simply because the court mentioned penetration in its recitation of the facts, it must have imposed a harsher sentence based on such finding. Such an interpretation is belied by the court's recitation of the factors that it did consider in imposing sentence. The court expressly found petitioner's actions to be serious and deserving of punishment, not because petitioner did or did not insert his finger "a little bit" into his step-granddaughter's vagina, but because he deliberately betrayed an innocent child and caused incalculable harm to the victim. Petitioner fails to show that, absent evidence of penetration, there was a substantial likelihood of a different result.

¶ 26. We reach a similar conclusion as to the remaining facts cited by petitioner. It is not reasonable to infer on this record that the court was so angry with petitioner based on the fact that he had digitally penetrated the victim that he ordered petitioner into custody prior to the conclusion of the hearing. It is not clear from the transcript of the sentencing hearing that anyone attempted to remove petitioner from the courtroom, or that the court ordered such action. The reasonable construction of the record is that the sentencing court simply ordered petitioner to begin his sentence forthwith. This is reflected in defense counsel's statement that he understood the court to have ruled that the sentence would begin immediately, and further evidenced by the court's denial of

counsel's request to allow petitioner thirty days before commencing his sentence. There is no rational connection to be drawn between the "immediate" execution of sentence and any evidence about penetration. Reaching this conclusion does not require us to resolve disputed questions of fact. The record simply does not support petitioner's claim.

¶ 27. ■ Finally, the fact that the judge was upset while pronouncing the sentence does not lead to a reasonable inference that he must have been upset due to the fact that petitioner inserted his finger in the victim's vagina, and further that, because he was so upset, he imposed a harsher sentence than he otherwise would have done. Petitioner offers mere speculation upon speculation. See *Richards v. Nowicki*, 172 Vt. 142, 150, 772 A.2d 510, 517 (2001) (recognizing that opponent of summary judgment cannot rely upon conjecture or speculation). Any connection between the judge's demeanor, evidence of penetration, and the sentence imposed is far too weak to demonstrate the requisite prejudice. Accepting defense counsel's description of the judge as accurate, the reasonable inference is that the judge was upset for the reasons identified in his sentencing decision — petitioner's betrayal of an innocent child and petitioner's refusal to accept that the victim would suffer any consequences from his actions. Petitioner fails to establish a reasonable probability that he would have received a lesser sentence but for counsel's unprofessional errors, and summary judgment was properly granted to the State.

*Affirmed.*

¶ 28. **Dooley, J.,** dissenting. This is a summary judgment proceeding, but the PCR court did not treat it as such. In particular, in deciding the prejudice question as a matter of law, the court ignored perhaps the most fundamental principle of the summary judgment standard: that the trial court must view the facts most favorably to the nonmoving party and afford that party — in this case petitioner — the benefit of all reasonable doubts and inferences. Here, the PCR court did exactly the opposite by viewing the facts favorably to the State and resolving all inferences and reasonable doubts in its favor. If the court had applied the correct standard, it would have been compelled to deny the State's motion for the following reason. Based on the record before us, a reasonable judge, viewing the evidence and all inferences favorably to petitioner, could conclude that petitioner

met his burden of showing a reasonable likelihood that his sentence would have been different had his attorney not engaged in what we must presume to be ineffective assistance of counsel.[2] For this reason, the case should be remanded for an evidentiary hearing. Accordingly, I respectfully dissent.

¶ 29. The PCR court did not state the summary judgment standard in rendering its decision, but that standard is well established. Summary judgment is authorized under Vermont Rule of Civil Procedure 56(a) when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] From the inception of the rule, courts, including this Court, have uniformly recognized that "the party opposing the summary judgment motion is to be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue exists." *Braun v. Humiston*, 140 Vt. 302, 306, 437 A.2d

---

[2] Petitioner argued that his trial attorney provided ineffective counsel by not objecting to facts in the presentence investigation (PSI) report concerning penetration. The State responded that, even assuming ineffective assistance based on the failure of petitioner's counsel to challenge statements concerning penetration in the PSI report, petitioner could not, as a matter of law, prove prejudice. The PCR court determined that petitioner had made out a prima facie case on the ineffectiveness element, stating that, viewed in a light most favorable to petitioner, "there is sufficient evidence of ineffective assistance to require a fact-based decision after a hearing." Therefore, we must assume ineffective assistance on appeal.

The majority notes petitioner's admission during police questioning that he digitally penetrated the victim, a fact that could conceivably undercut a claim of ineffectiveness on the point raised by petitioner. It is only fair to point out the context of petitioner's admission. As reported in the psychosexual evaluation of petitioner, he repeatedly denied penetration before stating, after the interrogating officer told him that he had "one more shot" to admit penetration so that he could get help and avoid throwing away thirty-two years of building his business: "I don't believe that I did, but if she says I did, that's as simple as that." Moreover, at the sentencing hearing, the prosecutor stated that the child "wouldn't be able to testify whether he went inside or not."

[3] Vermont's version of Rule 56 has always been "nearly identical to Federal Rule 56." Reporter's Notes, V.R.C.P. 56. Recently, the rule was amended and "replaced by a rule based almost entirely on the December 2010 amendments of Federal Rule 56." Reporter's Notes, 2012 Amendment. The recent amendment established "uniformity with the current federal rule," but made no "significant changes in the standard for granting summary judgment." *Id.* It did, however, substitute the phrase "dispute of material fact" for "issue of material fact" to better reflect " 'the focus of a summary judgment decision.' " *Id.* (quoting Federal Advisory Committee's Note on 2010 Amendment, which can be found in 12A C. Wright, A. Miller, et al., Federal Practice and Procedure, Federal Rules of Civil Procedure, Appendices, App. C., Rule 56, at 492 (2013)).

1388, 1389 (1981) (citing 10 C. Wright & A. Miller, Federal Practice and Procedure § 2727, at 526-28 (1973)), *overruled on other grounds by Soucy v. Soucy Motors, Inc.*, 143 Vt. 615, 471 A.2d 224 (1983); see *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."). We have recently reiterated this principle in the context of a post-conviction-relief (PCR) case involving a claim of ineffective assistance of counsel. See *In re Lowry*, 2013 VT 85, ¶¶ 9-10, 195 Vt. 14, 84 A.3d 816 (reversing grant of summary judgment because PCR court accepted unsupported inference that petitioner directed allegedly ineffective trial strategy); see also *O'Brien v. Synnott*, 2013 VT 33, ¶ 14, 193 Vt. 546, 72 A.3d 331 (reversing grant of summary judgment on battery claim because it was dependent upon inferences unfavorable to nonmoving party).

¶ 30. As explained in a leading treatise:

> The way in which [the summary judgment] test is applied at the appellate level is designed to give the party who defended [against] the motion the benefit of any doubt as to the propriety of granting summary judgment. . . . The message [from the U.S. Supreme Court] is clear; the party who defended against the motion for summary judgment will have the advantage of the court's reading the record in the light most favorable to him, will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those of the movant.

10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2716, at 274-77 (1998). "In sum, summary judgment will be granted only in clear cases." *Id.* § 2725, at 428-29; cf. *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 50, 582 A.2d 123, 127 (1990) (reversing summary judgment because, although basic facts were clear and undisputed, dispute did "not depend alone upon the specified facts found but also upon the reasonable inferences to be drawn from them" (quotation omitted)).

¶ 31. Thus, if the evidence presented on a motion for summary judgment "is subject to conflicting interpretations, or reasonable people might differ as to its significance, summary judgment is improper." 10A Wright, Miller & Kane, *supra*, § 2725, at 433-37

(citing federal and state cases); see *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 277 n.2 (2009) (rejecting argument that plaintiff's undisputed responses to sexual advances suggested consent to those advances on ground that all reasonable inferences had to be viewed favorably to plaintiff at summary judgment stage). "Even where there is no dispute as to demonstrable historical facts, summary judgment cannot be granted if differing inferences can be drawn from those undisputed historical facts sufficient to create a material dispute of fact." *Macy v. Trans World Airlines, Inc.*, 381 F. Supp. 142, 145 (D. Md. 1974); see also *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983) ("Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts."); *Chenette v. Trs. of Iowa Coll., Grinnell, Iowa*, 431 F.2d 49, 53 (8th Cir. 1970) ("Evaluative judgment between two rationally possible conclusions from facts cannot be engaged in on summary judgment."); cf. *Empire Elecs. Co. v. United States*, 311 F.2d 175, 180 (2d Cir. 1962) ("Where only one inference could reasonably be drawn from the undisputed evidentiary facts, then summary judgment would be proper.").

¶ 32. Moreover, the trial court "has no discretion to enlarge its power to grant summary judgment beyond the limits prescribed by the rule." 10A Wright, Miller & Kane, *supra*, § 2728, at 517. "[S]ummary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Id.* § 2728, at 518-23. The court's duty at the summary judgment stage is to determine whether a genuine dispute remains for trial — where the court can weigh the evidence. *Id.* § 2728, at 524; see *Vt. Envtl. Bd. v. Chickering*, 155 Vt. 308, 319, 583 A.2d 607, 613-14 (1990) ("Summary judgment is not a substitute for a determination on the merits, so long as evidence has been presented which creates an issue of material fact, no matter what view the court may take of the relative weight of that evidence."). Once the court determines that there is a triable issue, "the inquiry is at an end and summary judgment must be denied." 10A Wright, Miller & Kane, *supra*, § 2728, at 524.

¶ 33. Plainly, the PCR court did not adhere to this standard here. To the contrary, the court weighed all reasonable doubts and inferences in favor of the State in granting the State's motion for

summary judgment on the issue of whether the facts supported a finding of prejudice. The majority appears to accept the above standard but states that "it is not reasonable to infer, given the evidence in the record, that simply because the [sentencing] court mentioned penetration in its recitation of the facts, it must have imposed a harsher sentence based on such finding." *Ante*, ¶ 25.[4] This is a gross understatement of what occurred at the sentencing hearing on the question of penetration.

¶ 34. After the completion of preliminary matters and the prosecutor's statement, penetration was the first and only subject raised by the sentencing court. The court noted several references to penetration in the PSI report and asked the prosecutor if they were accurate. The prosecutor responded, after noting that the child "wouldn't be able to testify whether [defendant] went inside or not," that "the affidavit was replete and the interview was replete with that. It was initially charged as a sexual assault." The court responded as follows:

> Well, I understood that. And — and the plea, obviously, has limited the potential incarceration. . . . Title 13 says that the sentencing court is to consider the nature and circumstances of the crime. And the statements that are made by the adults who talked to the child later, are — are part of this record.

---

[4] According to the majority, petitioner failed to show that, absent evidence of penetration, there was a "substantial likelihood" of a different result. *Ante*, ¶ 25. While the U.S. Supreme Court stated in a recent case that the likelihood of a different result must be "substantial" and "not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 792 (2011), the Court reiterated in that same case the uniformly accepted standard: whether it is "reasonably likely" that the result would have been different. *Id.* at 111, 131 S. Ct. at 792. The Court expressly noted that the "reasonably likely" standard does not require a showing that counsel's actions "more likely than not altered the outcome," even though the difference between the two standards is slight. *Id.* at 111-12, 131 S. Ct. at 792 (quotations omitted). In other words, the majority's use of the term "substantial likelihood" should not suggest a standard more rigorous than preponderance of the evidence. Indeed, it is a less rigorous standard than preponderance of the evidence. I agree with petitioner that the superior court in this case misstated the correct standard at one point in its decision when it concluded that "petitioner cannot show, by a preponderance of the evidence, that the [sentencing] court would have imposed a lesser sentence if it had not considered those [penetration] statements."

The prosecutor then added that "the use of the lubricant was pretty clear as to what the intent was," to which the court replied: "Oh, all right. Well, you know, this is your point to argue and I'll — I'll certainly consider that." The court then asked defense counsel to proceed with his statement.

¶ 35. In sum, the only subject on which the court questioned the prosecutor was penetration. When the prosecutor assured the court that there was plenty of evidence to support a finding of penetration, as indicated in the PSI report, the court noted that although the plea agreement limited the potential incarceration, it was authorized to consider "the nature and circumstances of the crime." Then, after confirming that the evidence on penetration was part of the record through affidavits and statements of adults who spoke to the child, the court indicated that it would consider it.

¶ 36. This was far more than a mere mention of penetration in a recitation of facts, but there's more. After defense counsel gave his statement and the court recused itself to deliberate, it returned to the courtroom and immediately stated that after "reviewing the presentence investigation and the defendant's comments, the Court concludes that the description of the offense given by the child is reliable," — including that "[h]is finger, as the child described it, was a little bit inside, but wasn't in that far." The court then went on to pronounce the sentence, noting the seriousness of the offense, the betrayal of the child, defendant's failure to recognize the harm done, and other factors. The court's apparent reliance on factors other than penetration does not demonstrate, however, that it did not rely upon the fact of penetration to enhance the sentence. See, e.g., *United States ex rel. Welch' v. Lane*, 738 F.2d 863, 867 (7th Cir. 1984) (holding that sentencing court's reliance on other allowable factors did not cure its reliance on inaccurate information); *People v. Barnes*, 875 N.Y.S.2d 545, 547 (App. Div. 2009) (stating that defendant need not establish that court enhanced sentence based "solely" on improper information, but rather only that court took improper information into account in making its determination).

¶ 37. Without question, based on this record, a PCR judge could reasonably infer that the sentencing court relied at least in part on the accuracy of the assertions of penetration to impose a harsher sentence on petitioner. Indeed, that is exactly what defense counsel believed occurred. As soon as the court finished

pronouncing its sentence, defense counsel objected to the court sentencing defendant based on the State's claim that it could prove penetration. Defense counsel noted that the allegations of penetration were never attested or probed and that the prosecutor had candidly admitted that the child would not be able to substantiate penetration. Rather than stating that the issue of penetration was not a significant consideration in its sentencing decision, the court responded, wrongly, that the prosecutor had only stated that it did not want to put the child through a trial. Again, a judge could reasonably infer that, after confirming the accuracy of the penetration statements in the PSI report, the sentencing court concluded that those statements could be relied upon in enhancing petitioner's sentence.

¶ 38. Indeed, courts have found a reasonable likelihood of a different outcome on comparable, or even lesser, grounds. See *State v. Cox*, 147 Vt. 421, 426, 519 A.2d 1144, 1147 (1986) (concluding that sentencing court referenced, and thus relied upon, incriminating statements made by defendant after he had requested counsel); see also *Lane*, 738 F.2d at 866-67 (finding reliance where sentencing judge gave "specific consideration to the questionable information"); *United States v. Stein*, 544 F.2d 96, 102 (2d Cir. 1976) (stating that trial judge's express reference "to these matters upon imposition of sentence indicates that she probably considered them to be material" or "otherwise there would not have been any point in her mentioning them"); *People v. Samuels*, 915 N.Y.S.2d 758, 759 (App. Div. 2011) (finding that sentencing court probably considered improper materials because it expressly mentioned them); *State v. Anderson*, 588 N.W.2d 75, 77-78 (Wis. Ct. App. 1998) (stating that sentencing court's general comments at sentencing hearing concerning allegations of prior violations cited in PSI report indicated that court relied upon allegations of sexual assault that had been recanted); cf. *State v. Koons*, 2011 VT 22, ¶ 14, 189 Vt. 285, 20 A.3d 662 (holding that court's statement at sentencing that victim was not first young girl defendant had had sex with palpably demonstrated its reliance upon sexual assault charge of which defendant had been acquitted); *In re Carter*, 2004 VT 21, ¶¶ 39-43, 176 Vt. 322, 848 A.2d 281 (concluding as matter of law that sentencing court relied upon defendant's uncounseled statement to his probation officer denying crime for which he was convicted, where denial of crime was central to PSI recommendation, court explicitly stated that it

relied upon PSI report, prosecutor argued for same sentence as one ultimately imposed based on same statements, and PCR court reasonably interpreted sentencing court's statements).

¶ 39. Here, the PCR court concluded as a matter of law that petitioner could not show a reasonable probability that he would have received a lesser sentence but for his counsel's failure to object to allegations of penetration because: (1) "[t]he bulk of the argument from the parties and the [sentencing] court's explanation of the basis for its sentence contained no mention of penetration"; (2) "the [sentencing] court's stated reason for th[e] description [of the crime as horrible] was that the crime was a betrayal of an innocent child" and that petitioner had failed to acknowledge the harm he had caused; (3) the sentencing court's "stated reasons for [imposing a harsh sentence] had nothing to do with penetration"; (4) the eight-to-fifteen-year sentence imposed was less than the ten-to-fifteen-year sentence requested by the prosecution (but notably the same as the sentence recommended in the PSI containing the allegedly improper allegations); and (5) the explanation given by the court as "the basis for its sentence would support the sentence even without consideration of the statements in the PSI relating to penetration."

¶ 40. Given the record as described above, the PCR court had to accord all reasonable doubts and inferences to the State to arrive at these conclusions. The court essentially ignored the penetration discussion and concluded that the other factors cited by the sentencing court were the primary factors that the sentencing court relied upon. As noted, the fact that the sentencing court may have relied upon other factors in making its decision does not demonstrate that it did not rely in part on the act of penetration. Viewing the record favorably to petitioner and according him all reasonable doubts and inferences, a judge could reasonably conclude that the sentencing court enhanced petitioner's sentence based, at least in part, on its assumption that petitioner had committed aggravated sexual assault by penetrating the child victim. Accordingly, in my view, summary judgment was inappropriate, and the matter should be remanded for an evidentiary hearing on petitioner's PCR petition.