2015 VT 76

# State of Vermont v. Damian Delisle

[124 A.3d 483]

No. 14-112

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.**

Opinion Filed May 29, 2015

*James A. Hughes*, Franklin County State's Attorney, St. Albans, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Eaton, J.** Defendant challenges his sentence of imprisonment for convictions of aggravated assault and burglary, asserting that the trial court improperly relied on evidence from a co-defendant's trial without providing defendant with notice and an opportunity to respond. We agree, and therefore vacate the sentence and remand for resentencing.

¶ 2. Defendant was charged with burglary and aggravated assault arising from an August 2012 incident in which he and a co-defendant, Timothy Lacross, entered a home in the Town of Enosburg, assaulted a resident, and stole prescription drugs. Defendant pled guilty to the charges in August 2013, and appeared for a contested sentencing hearing in February 2014. In addition to the burglary and assault, defendant was also appearing for sentencing on two unrelated convictions of grand larceny and simple assault.

¶ 3. At the start of the hearing, the trial court noted that it had received a presentence investigation report (PSI) and psychologi-

cal evaluation of defendant, and determined that neither party had any objections to the information contained therein. Both victims of the break-in provided statements describing the incident and its effect on their lives, followed by a brief argument from the state's attorney in support of an aggregate sentence of twenty-five to forty-six years.

¶ 4. Defendant called three witnesses: the probation officer who prepared the PSI, the clinical psychologist who conducted the forensic evaluation, and a Ph.D. candidate who assisted in preparing the evaluation. On direct examination, the probation officer was asked about defendant's ability to adapt to prison life, and more specifically whether there was "some concern that [defendant] historically has been a little bit of a follower of stronger personality types, anti-social personality types?" The officer responded that the risk of exposure to persons with anti-social personalities in prison was unavoidable, but expressed the view that defendant could benefit from programming while incarcerated.

¶ 5. The psychologist testified about defendant's background, which included a history of abuse by his father and significant substance abuse from a young age. He also noted the "inherent risk" of prolonged exposure to negative influences in prison, but observed that defendant had thus far "done a good job of avoiding that by staying very busy." The psychologist's associate testified that defendant was a viable candidate for programming and open to treatment, but echoed the view that prolonged incarceration increased the risk of defendant's falling prey to negative influences. Citing defendant's troubled background, substance abuse, amenability to programming, and relative youth — he was twenty-two years old at the time of the hearing — defense counsel argued in support of a sentence of three to twelve years.

¶ 6. In explaining its sentencing decision, the trial court observed at the outset that it had presided at the trial of the co-defendant, Timothy Lacross, and that "obviously the Court heard the entire story involving the . . . home invasion." While acknowledging the argument for leniency based on defendant's age, addiction, and difficult upbringing, the court found that these factors were "overshadowed in this case by the sheer heinousness of this crime," its impact on the victims, and the need for a commensurate punishment. In this regard, the court emphasized that — although a joint endeavor — the crimes were instigated

principally by defendant and were largely his responsibility. As the court explained:

> One part of this equation that the Court wanted to talk a little bit [about] is the fact that I think [defendant] has sort of been seen as a follower. That was referenced somewhere. I don't really see him as a follower. I see him more not necessarily as a leader . . . in the positive sense of the word, but more a manipulator and exploitive person.
>
> And I'm referring to the case of Timothy Lacross in the home invasion. The Court believes that although Mr. Lacross was found guilty of the . . . burglary charge and the Court dismissed the other charge, the accessory for the assault . . . in that case because the Court didn't find . . . there was really any evidence that Mr. Lacross knew that [defendant] was going to assault [the victim], the Court believes that [defendant] took advantage of Mr. Lacross, who has very limited cognitive ability, who does not have a significant criminal background, but has significant limitations. And [defendant] used Mr. Lacross to go with him and explained to him that it would be okay. That there wouldn't . . . be anybody there. That there'd be drugs there. He took advantage of Mr. Lacross. That doesn't make Mr. Lacross to be a victim or without some culpability, but certainly in . . . the scheme of things, [defendant] was the, quote/unquote, leader there and not . . . a follower.

¶ 7. The court concluded that, while the sentence advocated by the State might be appropriate for an older offender "who had less chance to rehabilitate," defendant's age militated against it. At the same time, the court found that the sentence urged by defendant failed to account for the seriousness of the offense and the need for punishment, "which the Court looks at as more of a primary factor." Accordingly, the court imposed an aggregate sentence of ten to twenty years to serve. This appeal followed.

¶ 8. ■ Defendant contends the trial court improperly relied on evidence from his co-defendant's trial without providing him with notice and an opportunity to respond. The trial court generally "enjoys broad discretion in sentencing," and its sentence will be

upheld if it is within the statutory limits and "not derived from the court's reliance on improper or inaccurate information." *State v. Koons*, 2011 VT 22, ¶ 10, 189 Vt. 285, 20 A.3d 662 (quotation omitted). To ensure that reliability, our rules establish "a process of disclosure and opportunity to rebut." *State v. Ramsay*, 146 Vt. 70, 78, 499 A.2d 15, 20 (1985). Thus, a PSI must be made available to the defendant for inspection at least fourteen days prior to sentencing, and all other information submitted for consideration at sentencing must be disclosed "sufficiently in advance to afford a reasonable opportunity to rebut the information to be presented." *Id.*; see V.R.Cr.P. 32(c)(3) ("Any other information submitted to the court for consideration at sentencing shall be disclosed sufficiently prior to the imposition of sentence as to afford reasonable opportunity for the parties to decide what information, if any, the parties intend to controvert by the production of evidence.").

¶ 9. We applied these principles most recently in *Koons*, where the sentencing court relied, in part, on evidence from an earlier trial of the defendant on separate charges in which the court had presided. Although the defendant was acquitted in the earlier proceeding, the sentencing court nevertheless found by "clear and convincing evidence" that he had committed the offense, and that it demonstrated a pattern of misconduct. 2011 VT 22, ¶¶ 8-9. We concluded, however, that this was "patent" error where nothing in the PSI or other source had alerted the defendant to the court's intent to rely on evidence from the earlier proceeding. *Id.* ¶ 12. Moreover, from the record showing the pivotal role that the evidence had played in the court's sentencing decision, we concluded that the error was prejudicial. *Id.* ¶ 14. Finally, although no objection was raised at the sentencing hearing, we determined that the court's "detrimental reliance on information not disclosed in advance of sentencing raise[d] serious concerns about the fairness, integrity, and reputation of the judicial process," and therefore met the standard for "plain error" warranting a remand for new sentencing. *Id.* ¶ 15.

¶ 10. Although *Koons* involved a sentencing court's use of evidence from an earlier case against the defendant, the same principles govern here, where the earlier proceeding was against a co-defendant. As in *Koons*, defendant has not challenged the underlying propriety of relying on evidence from an earlier or related proceeding — assuming proper notice and an opportunity

to respond. See, e.g., *Logan v. United States*, 208 F.3d 541, 544 (6th Cir. 2000) (upholding sentencing court's reliance on evidence from trial of defendant's co-conspirators, observing that the court was "indeed permitted to rely on testimony presented at a related proceeding"); *United States v. Blackwell*, 49 F.3d 1232, 1236 (7th Cir. 1995) (noting that "more than one circuit has condoned reliance on evidence from related trial proceedings of codefendants" so long "[a]s with any other sentencing information, the court . . . give[s] the defendant an opportunity to rebut such evidence"). Accordingly, we need not reach the question of whether under Vermont's rules the court may consider evidence from a different proceeding if the defendant has proper notice and the opportunity to respond. Rather, the question here is whether defendant was adequately apprised of the evidence on which the court relied and afforded a reasonable opportunity to address it.

¶ 11. █ The record here plainly shows that nothing in defendant's PSI, psychological evaluation, or any of the testimony adduced at the sentencing hearing gave any indication that the court would rely on evidence from the co-defendant's trial to find that defendant was the "leader" of the criminal enterprise and took advantage of his co-defendant's "limited cognitive ability." Nevertheless, the State maintains that *Koons* is distinguishable because the defendant there was understandably "surprised" by the court's reliance on evidence from an unrelated proceeding in which he was *acquitted*. Here, in contrast, the co-defendant was *convicted* of burglary arising from the same incident, and the State asserts that defendant knew or "should have known" that the court would consider the evidence as it related to defendant at sentencing.

¶ 12. The argument is unpersuasive. We did not find that the defendant lacked notice in *Koons* because the evidence was from an earlier trial on an unrelated charge or because it resulted in an acquittal. The lack of notice arose from the fact that "[n]othing in the PSI referred to [the] defendant's earlier acquittal or gave any indication that the State intended to rely on the underlying charge and conduct — despite the not-guilty verdict — at the sentencing hearing." 2011 VT 22, ¶ 12. As noted, the same lack of notice obtained here.

¶ 13. We note, as well, that other courts have found a similar failure of notice on facts strikingly similar to those presented

here. In *United States v. Berzon*, for example, the presiding judge at the defendant's sentencing hearing observed that he was "intimately familiar" with the evidence from having presided at a co-defendant's sentencing and had "deduced from all of the facts known to [him] that [the defendant] was a leader of that group" and had "orchestrat[ed] their movements." 941 F.2d 8, 13-14 (1st Cir. 1991). On appeal, the federal circuit court concluded that it was error for the trial court to rely on evidence from the co-defendant's sentencing hearing regarding the defendant's role in the offense without advising the defendant in advance that it "was taking into account that testimony, thus enabling him to respond to it before the sentence was set." *Id.* at 21.[*]

¶ 14. In so holding, the circuit court also rejected the government's claim, similar to the State's argument here, that the defendant had "constructive notice of the contents" of the earlier sentencing hearing because it arose out of the same offense and thus the defendant should have been alert to the need "to rebut this information at his own sentencing." *Id.* at 17. As the court explained, however, the co-defendant's sentencing "was not part of a joint proceeding in which [the defendant] or his counsel took part," and it would be neither fair nor practical to put "the onus . . . on a defendant or his counsel to discover . . . in advance" what evidence the court may utilize from a separate proceeding. *Id.*

¶ 15. The court reached a similar conclusion in *Blackwell*, where the claim was again "that the [trial] court improperly considered testimony from codefendants' sentencing hearings in finding that [the defendant] played a leadership role" in the offense. 49 F.3d at 1235. As in *Berzon*, the circuit court concluded that the defendant was not "given sufficient notice to allow him meaningfully to rebut the prior testimony," and therefore was compelled to vacate the sentence and remand for a new hearing. *Id.* at 1239.

¶ 16. Another decision closely on point is *People v. Pourat*, where — as here — the defendant claimed that the sentencing court erred by relying on its own "recollection of the evidence from a co-defendant's trial" without affording him notice and an opportunity to respond. 100 P.3d 503, 504-05 (Colo. App. 2004).

---

[*] Like its Vermont counterpart, the federal rule, F.R.Cr.P. 32, requires advance notice of the presentence report and an opportunity to challenge information in the report.

The defendant had argued at sentencing that it was the co-defendant who had "actually directed the illegal operations," but the trial court — after referring to its notes from the trial of a co-defendant — found that both were "deeply involved" in the planning. *Id.* at 506. The Colorado court reversed, holding that the trial court "erred in relying for sentencing purposes upon information and evidence not included within the presentence report or disclosed to [the] defendant by some other means prior to the sentencing hearing." *Id.* We thus find no merit to the State's claim that defendant was effectively on notice of the court's intent to rely on evidence from his co-defendant's trial.

¶ 17. ■ The State raises one final argument against the need for notice in these circumstances, pointing to the fact that Rule 32(c) expressly requires advance disclosure only of information "submitted to the court" for consideration at sentencing. Because the evidence of defendant's leadership role in the offenses here was not actually "submitted" to the court but rather raised by the court on its own, the State suggests that notice was not required. The argument is unpersuasive. Rule 32(c) provides not only for advance disclosure of information "submitted to the court" for consideration at sentencing, but also affords a defendant the right to challenge any "factual information submitted to the court *or otherwise taken into account* by the court in connection with sentencing." V.R.Cr.P. 32(c)(4)(A) (emphasis added). The underscored language clearly contemplates that the court may consider information beyond that "submitted" by the parties or the Department of Corrections. A defendant's express right to challenge information "taken into account by the court" would be meaningless, however, without the right to timely notice of the court's intent to rely on such information.

¶ 18. Indeed, the United States Supreme Court reached a similar conclusion with respect to a provision in the federal rule providing for advance notice of a presentence report and its recommendation under the federal sentencing guidelines, as well as an opportunity to comment. Although ordinarily the PSI would notify a defendant of the possibility of an upward departure from the guidelines, the question in *Burns v. United States* was whether the notice requirement applied in the unusual case where the sentencing court "on its own initiative" departed from the guidelines. 501 U.S. 129, 135 (1991). The Supreme Court held that, although the rule did not expressly address this scenario, it would

"make[ ] no sense to impute to Congress an intent that a defendant have the right *to comment* on the appropriateness of a *sua sponte* departure but not the right *to be notified* that the court is contemplating such a ruling." *Id.* at 135-36.

¶ 19. ■ ■ Here, similarly, the right to "comment upon" or indeed even to challenge through the submission of countervailing evidence any information "taken into account by the court in connection with sentencing," V.R.Cr.P. 32(c)(4)(A), would be largely worthless absent timely notice of the information in question. As we have recognized, the requirements of Rule 32(c) are based on a defendant's "constitutional right that he not be sentenced on the basis of materially untrue information." *Ramsay*, 146 Vt. at 78, 499 A.2d at 20; see also Reporter's Notes — 1982 Amendment, V.R.Cr.P. 32 (explaining that "disclosure is justified by the demands of fundamental fairness since the defendant should be able to ensure the sentence is based on accurate and fair information" (quotation omitted)). To read Rule 32 to dispense with notice merely because the information was raised by the sentencing court on its own initiative, as the State urges, would thus raise serious due process concerns. See *In re Request for Jurisdictional Opinion*, 2015 VT 41, ¶ 19, 198 Vt. 510, 117 A.3d 457 ("[W]e avoid construing a statute in a manner that would render it unconstitutional whenever reasonably possible.").

¶ 20. ■ Having concluded that the trial court here erred in relying on evidence from the co-defendant's trial without notice to defendant, it remains to be determined whether the error was prejudicial. Because defendant failed to object below, the standard is an elevated one, requiring a showing that the error affected "substantial rights" with serious ramifications for the "fairness, integrity or public reputation of judicial proceedings." *Koons*, 2011 VT 22, ¶ 11 (quotation omitted). As summarized earlier, the record shows that the principal factors in the court's sentencing decision were its findings concerning the heinousness of the crimes and defendant's principal responsibility as the leader of the criminal enterprise who manipulated and took advantage of his co-defendant. The record thus leaves no doubt that evidence from the co-defendant's trial played a material part in the court's sentencing decision, and was plainly prejudicial. Moreover, as we observed in *Koons*, a court's "detrimental reliance on information not disclosed in advance of sentencing" is precisely the kind of error

that raises "serious concerns" about the essential fairness, integrity, and reputation of the judicial process. *Id.* ¶ 15. Accordingly, the error requires that defendant's sentence be vacated, and "the matter remanded for resentencing before a different judge." *Id.* ¶ 16; see *In re Meunier*, 145 Vt. 414, 423, 491 A.2d 1019, 1025 (1985) (sentencing error required reversal and remand for resentencing before different judge "[i]n order to insure no inadvertent prejudice").

*The sentence is vacated, and the cause is remanded for resentencing before a different judge.*