2015 VT 76








State v. Delisle (2014-112)

 

2015 VT 76

 

[Filed 29-May-2015]

 

NOTICE:  This opinion is subject
to motions for reargument under V.R.A.P. 40 as well as formal revision before
publication in the Vermont Reports.  Readers are requested to notify the
Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont
Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors
in order that corrections may be made before this opinion goes to press.

 

 


 
 
 2015 VT 76
 
 


 


 
 
 No. 2014-112
 
 


 


 
 
 State of Vermont
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Franklin Unit,
 
 
 
 
  
 
 
 Criminal Division
 
 
 
 
  
 
 
  
 
 
 
 
 Damian Delisle
 
 
 March Term, 2015
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Martin
 A. Maley, J.
 
 
 
 
  
 
 


James A. Hughes, Franklin County State’s Attorney, St.
Albans, for Plaintiff-Appellee.

 

Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and
Eaton, JJ.

 

 

¶ 1.            
EATON, J.   Defendant challenges his sentence of imprisonment for
convictions of aggravated assault and burglary, asserting that the trial court
improperly relied on evidence from a co-defendant’s trial without providing
defendant with notice and an opportunity to respond.  We agree, and therefore
vacate the sentence and remand for resentencing.

¶ 2.            
Defendant was charged with burglary and aggravated assault arising from an
August 2012 incident in which he and a co-defendant, Timothy Lacross, entered a
home in the Town of Enosburg, assaulted a resident, and stole prescription
drugs.  Defendant pled guilty to the charges in August 2013, and appeared for a
contested sentencing hearing in February 2014.  In addition to the burglary and
assault, defendant was also appearing for sentencing on two unrelated convictions
of grand larceny and simple assault.   

¶ 3.            
At the start of the hearing, the trial court noted that it had received a
presentence investigation report (PSI) and psychological evaluation of
defendant, and determined that neither party had any objections to the information
contained therein.  Both victims of the break-in provided statements describing
the incident and its effect on their lives, followed by a brief argument from
the State’s Attorney in support of an aggregate sentence of twenty-five to
forty-six years.

¶ 4.            
Defendant called three witnesses: the probation officer who prepared the
PSI, the clinical psychologist who conducted the forensic evaluation, and a
Ph.D. candidate who assisted in preparing the evaluation.  On direct
examination, the probation officer was asked about defendant’s ability to adapt
to prison life, and more specifically whether there was “some concern that
[defendant] historically has been a little bit of a follower of stronger
personality types, anti-social personality types?”  The officer responded that the
risk of exposure to persons with anti-social personalities in prison was
unavoidable, but expressed the view that defendant could benefit from
programming while incarcerated.   

¶ 5.            
The psychologist testified about defendant’s background, which included a
history of abuse by his father and significant substance abuse from a young
age.  He also noted the “inherent risk” of prolonged exposure to negative
influences in prison, but observed that defendant had thus far “done a good job
of avoiding that by staying very busy.”  The psychologist’s associate testified
that defendant was a viable candidate for programming and open to treatment,
but echoed the view that prolonged incarceration increased the risk of defendant’s
falling prey to negative influences.  Citing defendant’s troubled background,
substance abuse, amenability to programming, and relative youth—he was twenty-two
years old at the time of the hearing—defense counsel argued in support of a
sentence of three to twelve years.  

¶ 6.            
In explaining its sentencing decision, the trial court observed at the
outset that it had presided at the trial of the co-defendant, Timothy Lacross,
and that “obviously the Court heard the entire story involving the . . . home
invasion.”  While acknowledging the argument for leniency based on defendant’s
age, addiction, and difficult upbringing, the court found that these factors
were “overshadowed in this case by the sheer heinousness of this crime,” its
impact on the victims, and the need for a commensurate punishment.  In this
regard, the court emphasized that—although a joint endeavor—the crimes were
instigated principally by defendant and were largely his responsibility.  As
the court explained: 

 
One part of this equation that the Court wanted to talk a little bit [about] is
the fact that I think [defendant] has sort of been seen as a follower.  That
was referenced somewhere.  I don’t really see him as a follower.  I see him
more not necessarily as a leader . . . in the positive sense of the word, but
more a manipulator and exploitive person.  

 

 
And I’m referring to the case of Timothy Lacross in the home invasion.  The
Court believes that although Mr. Lacross was found guilty of the . . . burglary
charge and the Court dismissed the other charge, the accessory for the assault
. . . in that case because the Court didn’t find . . . there was really any
evidence that Mr. Lacross knew that [defendant] was going to assault [the
victim], the Court believes that [defendant] took advantage of Mr. Lacross, who
has very limited cognitive ability, who does not have a significant criminal
background, but has significant limitations.  And [defendant] used Mr. Lacross
to go with him and explained to him that it would be okay.  That there wouldn’t
. . . be anybody there.  That there’d be drugs there.  He took advantage of Mr.
Lacross.  That doesn’t make Mr. Lacross to be a victim or without some
culpability, but certainly in . . . the scheme of things, [defendant] was the,
quote/unquote, leader there and not . . . a follower.   

 

¶ 7.            
The court concluded that, while the sentence advocated by the State might
be appropriate for an older offender “who had less chance to rehabilitate,”
defendant’s age militated against it.  At the same time, the court found that
the sentence urged by defendant failed to account for the seriousness of the
offense and the need for punishment, “which the Court looks at as more of a
primary factor.”  Accordingly, the court imposed an aggregate sentence of ten
to twenty years to serve.  This appeal followed. 

¶ 8.            
Defendant contends the trial court improperly relied on evidence from
his co-defendant’s trial without providing him with notice and an opportunity
to respond.  The trial court generally “enjoys broad discretion in sentencing,”
and its sentence will be upheld if it is within the statutory limits and “not
derived from the court’s reliance on improper or inaccurate information.”  State
v. Koons, 2011 VT 22, ¶ 10, 189 Vt. 285, 20 A.3d 662 (quotation omitted). 
To ensure that reliability, our rules establish “a process of disclosure and
opportunity to rebut.”  State v. Ramsay, 146 Vt. 70, 78, 499 A.2d 15, 20
(1985).   Thus, a PSI must be made available to the defendant for inspection at
least fourteen days prior to sentencing, and all other information submitted
for consideration at sentencing must be disclosed “sufficiently in advance to
afford a reasonable opportunity to rebut the information to be presented.”  Id.;
see V.R.Cr.P. 32(c)(3) (“Any other information submitted to the court for
consideration at sentencing shall be disclosed sufficiently prior to the
imposition of sentence as to afford reasonable opportunity for the parties to
decide what information, if any, the parties intend to controvert by the
production of evidence.”).

¶ 9.            
We applied these principles most recently in Koons, where the sentencing
court relied, in part, on evidence from an earlier trial of the defendant on
separate charges in which the court had presided.  Although the defendant was
acquitted in the earlier proceeding, the sentencing court nevertheless found by
“clear and convincing evidence” that he had committed the offense, and that it demonstrated
a pattern of misconduct.  2011 VT 22, ¶¶ 8-9.  We concluded, however, that this
was “patent” error where nothing in the PSI or other source had alerted the
defendant to the court’s intent to rely on evidence from the earlier
proceeding.  Id.  ¶  12.  Moreover, from the record showing the pivotal
role that the evidence had played in the court’s sentencing decision, we
concluded that the error was prejudicial.  Id. ¶ 14.  Finally, although
no objection was raised at the sentencing hearing, we determined that the
court’s “detrimental reliance on information not disclosed in advance of
sentencing raise[d] serious concerns about the fairness, integrity, and
reputation of the judicial process,” and therefore met the standard for “plain
error” warranting a remand for new sentencing.  Id. ¶ 15.  

¶ 10.        
Although Koons involved a sentencing court’s use of evidence from
an earlier case against the defendant, the same principles govern here, where
the earlier proceeding was against a co-defendant.  As in Koons, defendant
has not challenged the underlying propriety of relying on evidence from an
earlier or related proceeding—assuming proper notice and an opportunity to respond. 
See, e.g., Logan v. United States, 208 F.3d 541, 544 (6th Cir. 2000) (upholding
sentencing court’s reliance on evidence from trial of defendant’s
co-conspirators, observing that the court was “indeed permitted to rely on
testimony presented at a related proceeding”); United States v. Blackwell,
49 F.3d 1232, 1236 (7th Cir. 1995) (noting that “more than one circuit has
condoned reliance on evidence from related trial proceedings of codefendants”
so long “[a]s with any other sentencing information, the court . . . give[s]
the defendant an opportunity to rebut such evidence”).  Accordingly, we need not
reach the question of whether under Vermont’s rules the court may consider
evidence from a different proceeding if the defendant has proper notice and the
opportunity to respond.  Rather, the question here is whether defendant was
adequately apprised of the evidence on which the court relied and afforded a
reasonable opportunity to address it. 

¶ 11.        
The record here plainly shows that nothing in defendant’s PSI,
psychological evaluation, or any of the testimony adduced at the sentencing
hearing gave any indication that the court would rely on evidence from the
co-defendant’s trial to find that defendant was the “leader” of the criminal
enterprise and took advantage of his co-defendant’s “limited cognitive
ability.”  Nevertheless, the State maintains that Koons is
distinguishable because the defendant there was understandably “surprised” by
the court’s reliance on evidence from an unrelated proceeding in which he was acquitted. 
Here, in contrast, the co-defendant was convicted of burglary arising
from the same incident, and the State asserts that defendant knew or “should
have known” that the court would consider the evidence as it related to defendant
at sentencing.  

¶ 12.        
The argument is unpersuasive.  We did not find that the defendant lacked
notice in Koons because the evidence was from an earlier trial on an
unrelated charge or because it resulted in an acquittal.  The lack of notice arose
from the fact that “[n]othing in the PSI referred to [the] defendant’s earlier
acquittal or gave any indication that the State intended to rely on the underlying
charge and conduct—despite the not-guilty verdict—at the sentencing hearing.” 
2011 VT 22, ¶ 12.  As noted, the same lack of notice obtained here. 

¶ 13.        
We note, as well, that other courts have found a similar failure of notice
on facts strikingly similar to those presented here.  In United States v.
Berzon, for example, the presiding judge at the defendant’s sentencing
hearing observed that he was “intimately familiar” with the evidence from having
presided at a co-defendant’s sentencing and had “deduced from all of the facts
known to [him] that [the defendant] was a leader of that group” and had “orchestrat[ed]
their movements.”  941 F.2d 8, 13-14 (1st Cir. 1991).  On appeal, the federal
circuit court concluded that it was error for the trial court to rely on evidence
from the co-defendant’s sentencing hearing regarding the defendant’s role in
the offense without advising the defendant in advance that it “was taking into
account that testimony, thus enabling him to respond to it before the sentence
was set.”  Id. at 21.* 


¶ 14.        
In so holding, the circuit court also rejected the government’s claim,
similar to the State’s argument here, that the defendant had “constructive
notice of the contents” of the earlier sentencing hearing because it arose out
of the same offense and thus the defendant should have been alert to the need “to
rebut this information at his own sentencing.”  Id. at 17.  As the court
explained, however, the co-defendant’s sentencing “was not part of a joint
proceeding in which [the defendant] or his counsel took part,” and it would be neither
fair nor practical to put “the onus . . . on a defendant or his counsel to
discover . . . in advance” what evidence the court may utilize from a separate
proceeding.  Id.   

¶ 15.        
The court reached a similar conclusion in Blackwell, where the
claim was again “that the [trial] court improperly considered testimony from
codefendants’ sentencing hearings in finding that [the defendant] played a
leadership role” in the offense.  49 F.3d at 1235.  As in Berzon, the circuit
court concluded that the defendant was not “given sufficient notice to allow
him meaningfully to rebut the prior testimony,” and therefore was compelled to vacate
the sentence and remand for a new hearing.  Id. at 1239.  

¶ 16.        
Another decision closely on point is People v. Pourat, where—as
here—the defendant claimed that the sentencing court erred by relying on its
own “recollection of the evidence from a co-defendant’s trial” without
affording him notice and an opportunity to respond.  100 P.3d 503, 504-05
(Colo. App. 2004).  The defendant had argued at sentencing that it was the
co-defendant who had “actually directed the illegal operations,” but the trial
court—after referring to its notes from the trial of a co-defendant—found that
both were “deeply involved” in the planning.  Id. at 506.  The Colorado court
reversed, holding that the trial court “erred in relying for sentencing
purposes on information and evidence not included within the presentence report
or disclosed to [the] defendant by some other means prior to the sentencing
hearing.”  Id.  We thus find no merit to the State’s claim that defendant
was effectively on notice of the court’s intent to rely on evidence from his
co-defendant’s trial.  

¶ 17.        
The State raises one final argument against the need for notice in these
circumstances, pointing to the fact that Rule 32(c) expressly requires advance
disclosure only of information “submitted to the court” for consideration at
sentencing.  Because the evidence of defendant’s leadership role in the
offenses here was not actually “submitted” to the court but rather raised by
the court on its own, the State suggests that notice was not required.  The
argument is unpersuasive.  Rule 32(c) provides not only for advance disclosure
of information “submitted to the court” for consideration at sentencing, but
also affords a defendant the right to challenge any “factual information
submitted to the court or otherwise taken into account by the court in
connection with sentencing.”  V.R.Cr.P. 32(c)(4)(A) (emphasis added).  The
underscored language clearly contemplates that the court may consider information
beyond that “submitted” by the parties or the Department of Corrections.  A defendant’s
express right to challenge information “taken into account by the court” would
be meaningless, however, without the right to timely notice of the court’s intent
to rely on such information.  

¶ 18.        
Indeed, the United States Supreme Court reached a similar conclusion
with respect to a provision in the federal rule providing for advance notice of
a presentence report and its recommendation under the federal sentencing
guidelines, as well as an opportunity to comment.  Although ordinarily the PSI
would notify a defendant of the possibility of an upward departure from the
guidelines, the question in Burns v. United States was whether the
notice requirement applied in the unusual case where the sentencing court “on
its own initiative” departed from the guidelines.  501 U.S. 129, 135 (1991). 
The Supreme Court held that, although the rule did not expressly address this
scenario, it would “make[] no sense to impute to Congress an intent that a
defendant have the right to comment on the appropriateness of a sua
sponte departure but not the right to be notified that the court is
contemplating such a ruling.”  Id. at 135-36.  

¶ 19.        
Here, similarly, the right to “comment upon” or indeed even to challenge
through the submission of countervailing evidence any information “taken into
account by the court in connection with sentencing,” V.R.Cr.P. 32(c)(4)(A),
would be largely worthless absent timely notice of the information in
question.  As we have recognized, the requirements of Rule 32(c) are based on a
defendant’s “constitutional right that he not be sentenced on the basis of
materially untrue information.”  Ramsay, 146 Vt. at 78, 499 A.2d at 20;
see also Reporter’s Notes—1982  Amendment, V.R.Cr.P. 32 (explaining that
“disclosure is justified by the demands of fundamental fairness since the
defendant should be able to ensure the sentence is based on accurate and fair
information” (quotation omitted)).  To read Rule 32 to dispense with notice merely
because the information was raised by the sentencing court on its own
initiative, as the State urges, would thus raise serious due process concerns.  See
In re Request for Jurisdictional Opinion, 2015 VT 41, ¶ 19, ___ Vt. ___,
___ A.3d ___ (“[W]e avoid construing a statute in a manner that would render it
unconstitutional whenever reasonably possible.”).

¶ 20.        
Having concluded that the trial court here erred in relying on evidence
from the co-defendant’s trial without notice to defendant, it remains to be
determined whether the error was prejudicial.  Because defendant failed to
object below, the standard is an elevated one, requiring a showing that the
error affected “substantial rights” with serious ramifications for the
“fairness, integrity, or public reputation of judicial proceedings.”  Koons,
2011 VT 22, ¶ 11 (quotation omitted).  As summarized earlier, the record shows
that the principal factors in the court’s sentencing decision were its findings
concerning the heinousness of the crimes and defendant’s principal responsibility
as the leader of the criminal enterprise who manipulated and took advantage of his
co-defendant.  The record thus leaves no doubt that evidence from the
co-defendant’s trial played a material part in the court’s sentencing decision,
and was plainly prejudicial.  Moreover, as we observed in Koons, a
court’s “detrimental reliance on information not disclosed in advance of
sentencing” is precisely the kind of error that raises “serious concerns” about
the essential fairness, integrity, and reputation of the judicial process.  Id.
¶ 15.  Accordingly, the error requires that defendant’s sentence be vacated,
and “the matter remanded for resentencing before a different judge.”  Id.
¶ 16; see In re Meunier, 145 Vt. 414, 423, 491 A.2d 1019, 1025 (1985)
(sentencing error required reversal and remand for resentencing before
different judge “[i]n order to insure no inadvertent prejudice”).  

The sentence is vacated, and
the cause is remanded for resentencing before a different judge.       

 

 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 









* 
Like its Vermont counterpart, the federal rule, F.R.Cr.P. 32, requires advance
notice of the presentence report and an opportunity to challenge information in
the report.