VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    24-AP-044



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

APRIL TERM,   2025

State of Vermont v. Richard Blackmer, Jr.\*    }
        }
        }
        }

APPEALED FROM:
Superior Court, Bennington Unit,
Criminal Division
CASE NOS: 845-7-19 Bncr, 341-4-20 Bncr,
213-7-20 Ancr, 22-CR-02423 & 22-CR-11806
Trial Judge: Kerry Ann McDonald-Cady

In the above-entitled cause, the Clerk will enter:

Defendant Richard Blackmer, Jr., pleaded guilty to one count of home-improvement fraud, two counts of false pretenses, and two counts of violating conditions of release (VCR). He appeals from his overall sentence of five-to-ten years to serve, arguing that the trial court improperly relied on uncharged allegations of fraud included in the probable-cause affidavit filed in support of one of the VCR charges.  We conclude that it was plain error for the court to consider these allegations in determining its sentence without first providing defendant with notice and an opportunity to respond.  As a result, we vacate defendant's sentence and remand for resentencing.

## I.    Procedural Background

In July 2019, the State charged defendant with one count of home-improvement fraud, one count of false pretenses or false tokens, and one count of providing false information to a law-enforcement officer.  In April 2020, the State charged defendant with twenty counts of false pretenses or false tokens and ten counts of issuing or passing bad checks.  The conditions of release imposed by the trial court in this second case included condition 31, which prohibited defendant from "enter[ing] into any contract with a value of more than $500 without court approval."  The State later amended the information to add an additional forty-five counts of false pretenses or false tokens.  The State filed a third case charging defendant with one count of false pretenses or false tokens in July 2020.  In March 2022, the State charged defendant in a fourth docket with one count of violating condition of release 31.

In September 2022, defendant entered an agreement with the State under which he pleaded guilty to one count of home-improvement fraud, one count of VCR, and two counts of

false pretenses in exchange for the State's dismissal of his other pending charges. The parties agreed to a contested sentencing hearing at which the State could argue for an overall sentence of no more than ten years to serve, defendant could argue for any lawful sentence, and the court could consider the dismissed charges, including in connection with its restitution judgment order. After defendant entered his pleas, the court directed the Department of Corrections (DOC) to prepare a presentence investigation report (PSI). Defendant's counsel noted that preparation of the PSI might take longer than was typical, given the number of victims involved.

In December 2022, prior to defendant's sentencing, the State charged him in a fifth docket with a second violation of condition 31. The supporting affidavit included the following allegations. In 2021, defendant met E.W. and her daughter D.W.M. at their home in New York. E.W.'s husband was ill and later passed away, D.W.M.'s husband had passed away and her son had cancer, and the two women needed help with repairs to their residence. Defendant claimed that he was a master artist and could complete the necessary work in their home. He also offered to sell E.W. hay and farm equipment. Over time, E.W. and D.W.M. paid defendant approximately $93,811.22 for hay, equipment, and various home renovations and repairs. The contracts at issue were for more than $500, and defendant did not receive court approval before entering any of them. E.W. and D.W.M. indicated that defendant still owed them approximately $10,000 worth of hay and that several of the home repairs they paid him for were not completed or not satisfactorily completed. E.W. told the victim's advocate that defendant "defrauded her of hay [and] farm equipment" and engaged in "home improvement fraud."

At defendant's arraignment on this new charge, the parties discussed the court's recent decision to grant the DOC's request to continue the sentencing hearing to allow additional time for preparation of the PSI. Regarding the second VCR charge, defendant's attorney told the court,

> I think what I'd like to do is, after speaking with the State and getting us a little time to wrap our hands around this, to then probably merge this into the sentencing, and so we could get this all put together. So we'll need to do a change of plea on this in the future.

The court ultimately scheduled the change-of-plea hearing for May 2023, prior to the contested sentencing hearing. Defendant moved for a continuance based on his attorney's schedule conflict. The court granted the motion, indicating that the change of plea would occur during the time allotted for the sentencing hearing the following month. However, the sentencing hearing was rescheduled after the DOC again requested more time to complete the PSI.

The PSI and an addendum consisting of numerous victim-impact statements and proposed restitution judgment orders were filed in August 2023. Neither document included information related to the second VCR charge or the broader allegations of fraud in the probable-cause affidavit.

Defendant did not appear at his sentencing hearing the following month. His attorney indicated that he recently learned defendant had been in a car accident and was hospitalized. The hearing was reset for January 2024.

At the outset of the January 2024 hearing, the court indicated that it had reviewed the PSI and addendum, plea agreement, defendant's criminal record, and "the affidavits for probable cause of all the dockets." The State noted its expectation regarding the pending charge "was that there was going to be a plea to that one VCR, and that was going to be incorporated in the sentencing as well, under the same ten-year cap." The court asked defendant's attorney whether he wanted to address the outstanding VCR charge in a separate proceeding. Defense counsel responded, "[i]t might be easier just to incorporate it right in." The court then asked whether defendant would like to enter his change of plea prior to the sentencing hearing, and his attorney agreed to do so. The State provided the following factual basis:

> between March of 2021 and July of 2022, [defendant] was subject to a condition of release that required him to first get court approval before entering into any contract, the value of which was more than 500 dollars. And over that time, [defendant] entered into . . . a number of contracts for services, providing repairs to a home with . . . [E.W.], of Ballston Lake, New York. And [defendant] did not get permission from the court before entering into any of those contracts.

Defendant entered a guilty plea.

The court then moved on to the contested sentencing proceeding. It heard statements from several victims, though neither E.W. nor D.W.M. were among them. The court asked defendant whether he intended to present evidence. His attorney responded that he did not, although defendant wished to make a statement.

The court first heard argument from the State, which requested an overall sentence of nine-to-ten years to serve. Among other things, the State contended that supervision would not be adequate to ensure that defendant did not engage in the same conduct again, noting:

> So we have two VCRs. One of them is simply entering into a contract, and there's no indication there that he had done essentially the same thing over and over again. But the VCR that he pled to, that occurred in New York, out of our jurisdiction, Vermont can't actually charge those crimes, other than the contract, because that's how we have the jurisdictional hook; he literally did the same thing. The woman whose husband had died, born in 1946. And that continued up into July of 2022. That's two months before he pled guilty.
>
>  So there's nothing stopping [defendant]. . . . [A] jail sentence is the only deterrent to do that.

The court asked the State about the many victim-impact statements reflecting a hope that defendant would be made to pay restitution and inquired about how it weighed those statements in requesting a significant period of incarceration. Counsel for the State responded that it was his belief that, if not incarcerated, defendant would "swindle other people to pay restitution. Unless he knows what happens if he continues to do it and gets caught again." He concluded, "I

3

wish I could say more. But seeing what [defendant] did in New York just shows that he's never going to stick."

Defendant's attorney in turn argued for a sentence of zero-to-seven years, explaining that this would allow defendant to maintain his current employment and therefore pay restitution to his victims while being supervised. Finally, defendant made a statement. He expressed his remorse and explained that he never intended to hurt or deceive anyone, but had become overwhelmed by the demands of maintaining his own business and, while "tr[ying] to pay people back and make things right and deliver what was owed," "just kept getting further and further behind" and did things he should not have as a result of the stress.

The court took a recess to deliberate and then announced its sentence. It began by addressing the nature and circumstances of defendant's crimes, explaining that

> between July 2018 and July 2022, [defendant] repeatedly defrauded unsuspecting individuals of both their money and goods when he made material representations to them with the intent to defraud them, resulting in [defendant] being paid up front and then intentionally not performing the terms of the contracts that he entered into.

It described his conduct as reflecting "the work of a professional con artist taking advantage of individuals, small business owners, and farmers across Bennington and beyond the Green Mountain State."

The court noted that defendant's limited prior criminal history and low risk-assessment score "would ordinarily support a sentence of probation, in particular when he has not ever been placed on probation, nor had the ability to be successful or unsuccessful at that." It concluded, however, that:

> Probation would not achieve the very basic goals of mitigating the risk of a subsequent offense to assure the protection of the public. The most salient evidence here is that despite court-imposed conditions . . . that he couldn't enter into a contract, that is exactly what he continued to do. And specifically, it's the defrauding [E.W.] from New York, when he engaged in repeated contracts with her to do home improvement and promised to do work that he never performed, and it resulted in approximately 94,000 dollars of her being paid to [defendant], which he never performed the contract of what he promised to do for her.

> And that disregard of the court order and, also, the reflection of what he was facing here; the multiple felony offenses that he was facing in all of the dockets, but, in particular, all the dismissed dockets because they were not dismissed back in July 2022; it just reflects the inability for supervision and probation to be able to address the risk factor here. The court does strongly believe that there does need to be a period of incarceration required here to

4

achieve the goals of sentencing. It's both a specific and general deterrence and punishment.

With respect to the goal of rehabilitation, the court noted that it did not find defendant's "statement that he did not intend to deceive anyone . . . accurate or sincere or supported by the facts of what he agreed to when he pled guilty to these offenses." It specifically noted that defendant,

> repeated to engage in this conduct and probably the most salient of that is the VCR involving . . . [E.W.], that in despite conditions of release, despite these cases that he had pled not guilty to, despite the fact that he was on conditions of release here, he still continued to engage in that hustling.
>
> I mean, quite frankly, hustling a vulnerable individual, not suspecting of what he has done, again, to try to profit from that individual here without the intention of ever completing the contract and what he promised to do—home improvement, helping her out in her home—and violating a court order that, specifically, he couldn't engage in a contract for services over 500 dollars; that's the most salient here, that it wasn't the consideration of him engaging in this in trying to pay back individuals.
>
> It's really the greed here of, this is who I am, and this is what I do, and I'm going to continue to engage in this criminal conduct until I'm no longer able to do that, meaning I'm incarcerated, I'm incapacitated, that I'm not able to do this.

Based on these and other considerations, the court imposed an overall sentence of five-to-ten years to serve: one-to-three years to serve on the home-improvement-fraud conviction; concurrent to sentences of five-to-ten years to serve on each false-pretenses conviction; and zero-to-six months for each VCR conviction. Defendant did not object to his sentence. This appeal followed.

## II.        Analysis

As noted above, each of defendant's arguments on appeal stem from the trial court's reliance on allegations of fraud contained in the probable-cause affidavit for the second VCR charge. As defendant points out, in pleading guilty to that offense, he admitted only to entering contracts for services valued at over $500 without court permission, thereby violating condition 31. He did not admit to defrauding E.W. or D.W.M. in connection with those transactions. Although the court did not expressly refer to the affidavit in its decision, it did indicate at the beginning of the hearing that it had reviewed the charging affidavit for each case, and the affidavit filed in support of the second VCR charge was the only possible source of information regarding those transactions in the record. The State concedes that the court's decision referenced information in that affidavit.

Defendant's related challenges to his sentence fall into three categories. He contends that the trial court engaged in plain error by: (1) considering the uncharged allegations of fraud in the

5

affidavit without providing him timely notice and an opportunity to rebut; (2) treating these allegations as though they were proven convictions of fraud; and (3) relying on materially inaccurate information related to the fraud allegations, because the court's factual findings regarding the scope and nature of that conduct were clearly erroneous. We agree with defendant's first argument, and therefore vacate his sentence and remand for resentencing. As a result, we do not reach his remaining contentions.

This Court reviews the factual findings underlying a sentencing decision for clear error. State v. Herring, 2019 VT 33, ¶ 27, 210 Vt. 144. While we generally review the sentence itself for an abuse of discretion, "if the appellant fails to object to his or her sentence at the time of sentencing, as in this case, the Court will vacate that sentence only upon a finding of plain error." State v. Ray, 2019 VT 51, ¶ 6, 216 Vt. 496; see State v. Yoh, 2006 VT 49A, ¶ 36, 180 Vt. 317 ("When an issue has been forfeited through a party's failure to raise it below . . . we may consider it only under the rubric of plain error."). Defendant concedes that the arguments he raises on appeal were not preserved below, but contends that the errors were plain.

"Plain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." State v. Pelican, 160 Vt. 536, 538 (1993) (quotation omitted). To show plain error, defendant must demonstrate that: (1) there was error; (2) the error is obvious; (3) the error affected his substantial rights and resulted in prejudice; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Ray, 2019 VT 51, ¶ 6. Before considering each criterion, we find it helpful to survey the relevant legal landscape, including the goals of sentencing, a defendant's constitutional rights in the sentencing process, and the procedures we have recognized as essential to protection of those rights.

Vermont courts have broad discretion in sentencing. Id. ¶ 7. A sentencing court's task "is to fashion an individualized sentence that is fair and just according to all the facts and circumstances of that unique case." State v. Sullivan, 2018 VT 112, ¶ 6, 208 Vt. 540. "Accordingly, it is appropriate for the sentencing court to consider a wide range of factors in determining a sentence." Id. ¶ 7. These include "the particular facts of the offense, even if such facts are not explicitly an element of the charge." State v. Allen, 2010 VT 47, ¶ 7, 188 Vt. 559 (mem.). And the court "may properly consider more than the facts of the particular crime at issue when sentencing a defendant." State v. Ingerson, 2004 VT 36, ¶ 10, 176 Vt. 428. A defendant's background, family, past conduct, character, and propensities are all among the considerations appropriately weighed in crafting a sentence. Id.

Although a sentencing court's discretion is broad, it is not unfettered. "[T]he court may not 'rely upon improper or inaccurate data in reaching its sentencing decision.' " State v. Neale, 145 Vt. 423, 436 (1985) (quoting United States v. Sand, 541 F.2d 1370, 1378 (9th Cir. 1976), cert. denied sub nom. Scully v. United States, 429 U.S. 1103 (1977)). This is because "[a] defendant has a constitutional right that he not be sentenced on the basis of materially untrue information." State v. Ramsay, 146 Vt. 70, 78 (1985) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948)).

In sentencing, "[f]actual reliability is sought through a process of disclosure and opportunity to rebut." Id. Vermont Rule of Criminal Procedure 32 lays out that process. It requires that information "submitted to the court at sentencing . . . be disclosed sufficiently prior

6

to the imposition of sentence as to afford reasonable opportunity for the parties to decide what information, if any, the parties intend to controvert by the production of evidence." V.R.Cr.P. 32(c)(3). Under the rule,

> [w]hen a defendant objects to factual information submitted to the court or otherwise taken into account by the court in connection with sentencing, the court shall not consider such information unless, after hearing, the court makes a specific finding as to each fact objected to that the fact has been shown to be reliable by a preponderance of the evidence, including reliable hearsay.

V.R.Cr.P. 32(c)(4)(B). Accordingly, "[a]t the time of sentencing, either party may offer evidence on any disputed factual issues in open court with full rights of cross-examination, confrontation, and representation by counsel." Ramsay, 146 Vt. at 78.

Therefore, while we have recognized that a sentencing court may consider "factual information" pertaining to uncharged criminal conduct by the defendant, it may do so only "with full disclosure sufficiently in advance of sentencing to allow an adequate opportunity for rebuttal." Id. at 81; see State v. Drake, 150 Vt. 235, 236 (1988) ("The defendant clearly has a right to present evidence . . . to rebut or to mitigate the testimony of others as to alleged prior, unconvicted criminal conduct."). We have explained that "[a] defendant's express right to challenge information 'taken into account by the court' would be meaningless . . . without the right to timely notice of the court's intent to rely on such information." State v. Delisle, 2015 VT 76, ¶ 17, 199 Vt. 397. Where a defendant exercises his or her right to rebut such information, the court may take it into account in sentencing only if it specifically finds that each fact objected to has been shown to be reliable by a preponderance of the evidence. V.R.Cr.P. 32(c)(4)(B).

Against this backdrop, we are compelled to conclude that the first plain-error factor—the existence of error—is satisfied. See Ray, 2019 VT 51, ¶ 6. Defendant had no notice that the court would consider the uncharged allegations of fraud in the VCR affidavit in determining his sentence.[1] He pleaded guilty only to entering contracts valued at over $500 without court permission in violation of condition 31. He was not charged with fraud in connection with any of those contracts: as the State indicated during the hearing, it lacked jurisdiction to charge him with offenses alleged to have occurred in New York. And neither the PSI, the addendum, the State's exhibits, nor any other information submitted to the court in advance of sentencing related to those allegations.

---

[1] To the extent the State suggests that defendant's right to notice and an opportunity to rebut was somehow diminished because he elected to enter his guilty plea to the second VCR charge directly before his sentencing hearing—a possibility that the court was aware of prior to the January 2024 proceeding—it identifies no support for this argument. See V.R.A.P. 28(a)(4), (b) (providing appellee's brief must contain its "contentions and the reasons for them" supported by citation to the authorities and statutes on which appellee relies). We therefore decline to address this contention as inadequately briefed. See State v. Bergquist, 2019 VT 17, ¶ 64 n.13, 210 Vt. 102 (explaining that this Court "will not consider issues . . . that are insufficiently raised and inadequately briefed").

The State observes that defendant was on notice of the allegations of fraud included in the probable-cause affidavit. But he did not have the specific notice due process requires here: notice that the court intended to rely on those allegations among the broad range of information it could consider in determining his sentence. See Delisle, 2015 VT 76, ¶ 11 (rejecting State's argument that defendant "should have known" that court would consider evidence from codefendant's trial "as it related to defendant at sentencing" and finding plain error based on lack of explicit notice). As we have explained, Rule 32(c) "affords a defendant the right to challenge any 'factual information submitted to or otherwise taken into account by the court in connection with sentencing,' " and this right "would be meaningless" without an accompanying "right to timely notice of the court's intent to rely on such information." Id. ¶ 17 (quoting V.R.Cr.P. 32(c)(4)(A)[2]).

The State also asserts that in order to show error, defendant must demonstrate that the court in fact relied on materially inaccurate information in sentencing him, and argues that he has not satisfied this burden. It is true that in State v. Ramsay, we held that "[o]n appeal, defendant bears the burden to show that materially inaccurate information was relied upon by the sentencing court." 146 Vt. at 79. But the State's reliance on Ramsay is misplaced. In that case, the defendant moved for the exclusion of certain statements included in his PSI prior to sentencing. The trial court declined to expunge the statements from the report, but offered to hold an evidentiary hearing under Rule 32. The defendant declined this opportunity. We concluded that in offering defendant an evidentiary hearing, the sentencing court satisfied the due-process requirements set forth in Rule 32 and our related case law. Id. at 82. Unlike the defendant in Ramsay, defendant did not have advance notice of the court's intention to rely on the uncharged fraud allegations in determining his sentence and, as a result, he was necessarily deprived of a fair opportunity to rebut or mitigate that information. See Delisle, 2015 VT 76, ¶¶ 8, 17 (explaining Rule 32 establishes a process of disclosure and opportunity to rebut in order to ensure that the court's sentence is not "derived from the court's reliance on improper or inaccurate information" (quotation omitted)); Reporter's Notes—1982 Amendment, V.R.Cr.P. 32 (explaining "disclosure is justified by the demands of fundamental fairness since the defendant should be able to ensure the sentence is based on accurate and fair information"). We have never suggested that where a defendant is not provided with both notice of the court's intention to rely on information at sentencing and an opportunity to rebut it, he or she nonetheless bears the burden to show on appeal that the information relied on by the court below was materially inaccurate. Such a requirement would make little sense given that, in that circumstance, there would be no record on which to do so. See Hoover v. Hoover, 171 Vt. 256, 258 (2000) (explaining that this Court's review confined to record and evidence adduced below and, "[o]n appeal, we cannot consider facts not in the record"); cf. State v. Kandzior, 2020 VT 37, ¶ 27, 212 Vt. 260 (explaining that where trial court fails to investigate possible jury taint, this Court assesses related claims of error under distinct analytical framework due to resulting lack of evidentiary record).

Although Ramsay articulates several principles key to our decision, this case is in posture far more like State v. Koons and State v. Delisle. In Koons, the defendant was convicted of sexual assault on a minor and lewd or lascivious conduct with a child. At his sentencing hearing, the State reminded the court that it had presided over the defendant's trial in an earlier, unrelated

---

[2] At the time, the quoted language was included in subparagraph (c)(4)(A); it has since been moved to subparagraph (c)(4)(B). Reporter's Notes—2020 Amendment, V.R.Cr.P. 32 ("Part of former (c)(4)(A) has been made into new subparagraph (B).").

criminal action involving an allegation of inappropriate sexual conduct with a minor. Though the earlier case resulted in an acquittal, the State "urged the court to make a finding 'that that event occurred, based on your Honor sitting on that case' and to 'consider that in formulating a sentence.' " 2011 VT 22, ¶ 6, 189 Vt. 285. The State did not, however, provide the defendant with notice of its intent to rely on this information at sentencing. The court found that the defendant "did have sexual relations with" the alleged victim in the earlier case, and we concluded its "reliance on the acquitted conduct in formulating a sentence was . . . palpable." Id. ¶ 14. Although the defendant did not object to the State's argument or the court's sentence on this basis below, we concluded that it was plain error to rely on the information without affording the defendant timely notice and an opportunity to respond. Id. ¶ 16. In Delisle, the court—on its own initiative, and without providing the defendant notice or an opportunity to respond—relied on evidence from the trial of a codefendant over which it also presided in sentencing the defendant for his convictions of aggravated assault and burglary. On this basis, it found that the defendant was the leader of the criminal enterprise giving rise to his convictions and that he manipulated and took advantage of his codefendant. It explained that this finding was a principal factor in its ultimate sentencing decision. 2015 VT 76, ¶ 11. Although the defendant likewise failed to object below, we concluded that it was plain error to rely on evidence from the codefendant's trial without notice and an opportunity to rebut. Id. ¶ 20.

In neither Delisle nor Koons did we suggest that the defendant bore the burden to show that the information relied on by the court was materially inaccurate despite the lack of notice or opportunity to rebut. Delisle, 2015 VT 76; Koons, 2011 VT 22. As in those cases, the error here lies in lack of notice. As a result, defendant does not bear the burden to show that the information relied on by the sentencing court was materially inaccurate. To show error, he need only demonstrate lack of appropriate notice. He has done so.

We therefore proceed to the next step of the test, which requires us to determine whether the error is "plain," i.e., "clear or obvious under existing law." Koons, 2011 VT 22, ¶ 13. The State argues that even if there was error here, it was not plain error because this Court has yet to determine "whether and under what circumstances a sentencing court may rely on information contained in the affidavit of probable cause." State v. Nash, 2019 VT 73, ¶ 4 n.1, 211 Vt. 160 (declining to reach contention that sentencing court erred in relying on facts in probable-cause affidavit where raised for the first time at oral argument and facts at issue unnecessary to our conclusion). But defendant's argument on appeal does not turn on the source of the information considered by the trial court. Instead, it centers on the nature of that information: allegations of criminal conduct that were neither charged nor proven by the State. On this point, our precedent is clear. Where "assertions of criminal activities are in fact supported by factual information," then that evidence may be considered by the sentencing court, but only "after timely disclosure and an opportunity to rebut." Ramsay, 146 Vt. at 81 (quotation and citation omitted) (addressing circumstances under which "claim[s] of criminal acts never validated by judgment of conviction" may be relied on by sentencing court and distinguishing between "arrest records," which "d[o] not belong in the 'prior criminal record' portion of the PSI" and "factual information describing conduct, whether charged or not" (first alteration in original) (quotation and emphases omitted)). This rule unambiguously applies here, notwithstanding that the information at issue was derived from a probable-cause affidavit.

In Koons, we concluded that the error was plain because "[t]here is no question that Vermont Rule of Criminal Procedure 32(c)(3) existed in its current form at the time of the sentencing in this case and required both advance notice of any information on which the State

intended to rely and an opportunity to respond." 2011 VT 22, ¶ 13. Moreover, we explained in Delisle that the error was no less plain where the information regarding uncharged conduct was not offered by the State but instead raised by the court on its own initiative. 2015 VT 76, ¶ 19 (recognizing that "[t]o read Rule 32 to dispense with notice merely because the information was raised by the sentencing court on its own initiative" would "raise serious due[-]process concerns"). Under Ramsay, Koons, Delisle, and Rule 32(c), the error was plain.

The third plain-error criterion requires a showing that the error was prejudicial and affected defendant's substantial rights. The record in this case compels us to conclude that it was. The court framed its analysis with a description of the nature and circumstances of defendant's crimes, explaining that between July 2018 and July 2022, defendant repeatedly defrauded numerous victims. But as defendant points out, on this record, the reference to fraud continuing until July 2022 could only be related to the allegations in the VCR probable-cause affidavit. Moreover, the key issue for the court in fashioning defendant's sentence was the appropriate duration of incarceration. As the court recognized, defendant did not seek a probationary sentence, but he did request a zero minimum term, arguing that this would allow him to maintain his employment and thus begin paying restitution. The State argued that a substantial period of incarceration was necessary to prevent defendant from defrauding other victims. In concluding that a period of incarceration was necessary to mitigate the risk of a subsequent offense, assure the protection of the public, and rehabilitate defendant—notwithstanding that a probationary sentence would otherwise be appropriate given defendant's limited prior criminal history and low risk-assessment score—the trial court repeatedly identified the transactions involving E.W. as the "most salient" consideration. Defendant's violations of condition 31 were certainly an appropriate factor for the court to weigh in considering whether supervision would serve the goals of sentencing. But it is apparent from the court's statements that it was not defendant's failure to comply with his conditions, standing alone, that drove its decision. Rather, the court stated:

> specifically, it's the defrauding [E.W.] from New York, when he engaged in repeated contracts with her to do home improvement and promised to do work that he never performed, and it resulted in approximately 94,000 dollars of her being paid to [defendant], which he never performed the contract of what he promised to do for her.

The allegations of fraud unquestionably played a significant role in defendant's ultimate sentence. The lack of notice was therefore prejudicial to defendant and impacted his substantial rights. See, e.g., Delisle, 2015 VT 76, ¶ 20 (explaining that where record showed principal factor in sentencing decision was defendant's role "as the leader of the criminal enterprise who manipulated and took advantage of his co-defendant," there was "no doubt that the evidence from the co-defendant's trial played a material part in the court's sentencing decision, and was plainly prejudicial"); Koons, 2011 VT 22, ¶ 14 (concluding that where court described defendant's "having sex with young girls" as key support for imposition of "a significant period of time to serve," its "finding—on the basis of the earlier charge—that 'this wasn't the first young girl that you had sex with' leads to the unavoidable conclusion that the acquitted conduct played a material part in its decision to impose a 'significant' sentence").

The final question is whether the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Yoh, 2006 VT 49A, ¶ 39 (alteration and quotation omitted).

10

As we observed in <u>Koons</u> and reaffirmed in <u>Delisle</u>, "a court's 'detrimental reliance on information not disclosed in advance of sentencing' is precisely the kind of error that raises 'serious concerns' about the essential fairness, integrity, and reputation of the judicial process." <u>Delisle</u>, 2015 VT 76, ¶ 20 (quoting <u>Koons</u>, 2011 VT 22, ¶ 15). Accordingly, we conclude that defendant has demonstrated plain error. As a result, his sentence must be vacated, and the matter remanded for resentencing before a different judge "[i]n order to insure no inadvertent prejudice." <u>In re Meunier</u>, 145 Vt. 414, 423 (1985); see <u>Delisle</u>, 2015 VT 76, ¶ 20 (vacating sentence and remanding for resentencing before different judge); <u>Koons</u>, 2011 VT 22, ¶ 16 (same).

<u>The sentence is vacated, and the matter remanded for resentencing before a different judge</u>.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Karen R. Carroll, Associate Justice


_____
Nancy J. Waples, Associate Justice

11